J. PETER SMITH V. THE TRADERS NATIONAL BANK.

No. 6063.

1. **Examination of Witnesses.**—A witness may be discredited by showing that he had made statements under oath in another proceeding in conflict with his testimony in the case pending.

2. **Charge of Court.**—The failure of the court to submit a charge relating to the rights of the parties under an alleged agreement which from the verdict of the jury never in their judgment existed, affords no ground for reversal.

3. **Contract—Accommodation Paper.**—A bank which as assignee of an accommodation note receives the same with notice either to its president or cashier of its true character, and that it was made under an agreement that designated collaterals should be held to secure its payment, and that such collaterals were not so held but the contract to hold them was violated by their transfer without the consent of the maker, can not enforce payment against the maker of the accommodation note.

APPEAL from Tarrant. Tried below before Hon. R. E. Beckham. The opinion states the case.

*Carter, Wynne & De Berry*, for appellant.— 1. The court erred in not allowing defendant Smith's attorneys to prove by H. C. Edrington that in the garnishment proceedings by the National Bank of Jefferson, Texas, wherein the Traders National Bank was in August, 1884, required to answer what effects of the Investment Company it held, that Edrington swore to the answer for said bank and stated that said bank held none of the effects of said Investment Company, as shown by bill of exceptions had and taken by Smith. Jordan v. The State, 10 Texas, 501, 502; 1 Greenl. Ev., 2 ed., sec. 462; Weir v. McGee, 25 Texas Supp., 32, 33; Johnson v. Brown, 51 Texas, 75; Alexander v. Lewis, 47 Texas, 492.

2. The court erred in his charge to the jury wherein he told the jury in effect that if the plaintiff agreed with the defendant to hold the shares of stock of the New Mexico Land and Cattle Company to secure the note sued upon, and did not, this would be a violation of the contract and would release the sureties, instead of instructing the jury that the alteration of the agreement to hold the stock made by the investment company and H. C. Edrington, assented to by the Traders National Bank, would release the makers of the note if accommodation makers, and that fact known to the plaintiff when said note was given. In this connection the charge was erroneous in this, because in effect it withdrew from the jury and failed to submit the defense made by Smith of an alteration of the agreement to hold said stock, and the court should have submitted that issue to the jury as requested by Smith in his special charge No. 1 asked and refused by the court. The special charge is given in the opinion.

*Hogsett & Greene*, for appellee — 1. It was not error for the court to sustain the objection to the evidence, because stocks and notes held as

collateral security are not property or effects subject to garnishment—not so made subject to execution by statute of 1874—and if Edrington had answered to a writ of garnishment that the bank did not have any property or effects of the Texas Investment Company, Limited, in its possession it would be no contradiction of his statement as a witness that it held stocks and notes as collateral security., Price v. Brady, 21 Texas, 619; Taylor v. Gillean, 23 Texas, 516.

2.  The court did not err as against appellant in that part of the charge complained of in said assignment, and did not err in failing to instruct the jury concerning the supposed alteration of the agreement to hold the stock made by the investment company and H. C. Edrington and alleged to have been assented to by the Traders National Bank, that it would release the maker of the note, etc., as complained of in said assignment, because the same was not the law of the case, and there was no evidence upon which to base such a charge.  Mora. on Priv. Cor., 1 ed., sec. 245; National Bank v. Haskell, 51 N. H., 116; Love v. Wyatt, 19 Texas, 312; Railway Co. v. Terry, 42 Texas, 451; Cain v. Thomas, 26 Texas, 581.

3.  The action of H. C. Edrington in taking the assignment of the surplus of the collaterals on the 15th of August, 1884, was not intended to bind the bank, but if it had been so intended by him it would not have been binding upon the bank, because he could not as cashier of the bank bind it in a matter where he was himself adversely interested.  Mora. Priv. Corp., 1 ed., sec. 245.

4.  The court did not err in instructing the jury concerning the violation of the alleged agreement to keep and hold the stock as security for the debt sued upon as requested by plaintiff instead of instructing them as to an alteration.  Love v. Wyatt, 19 Texas, 312; Cole. Coll. Sec., secs. 269–72, 345–46; 1 Pars. on Notes and Bills, 183–84, and·note.

HOBBY, JUDGE.—The Traders National Bank of Fort Worth, Texas, brought suit on October 2, 1884, against Walker Fore, W. J. Morphy, R. M. Henderson, and appellant J. P. Smith, on a promissory note executed by the parties named for the sum of $7000, to the order of the Texas Investment Company, Limited, with 12 per cent interest from maturity and 10 per cent upon principal and interest if collected by law, and transferred by said Texas Investment Company to appellee.

Fore and Henderson, who were alleged to be a copartnership and whose names as such were signed to the note, pleaded *non est factum* and denied the authority of any person to sign the same for them.

The pleadings of appellant were extended but presented substantially the following defenses:

That he was an accommodation maker of the note, which fact was known to appellee when it received the same.  That appellee when it received the note held·as collateral security for a debt of $12,500. due

appellee by the Texas Investment Company 287 shares, worth about $28,700, in the New Mexico Land and Cattle Company, which it agreed with appellant to also hold as security for the note sued on. That subsequently appellee materially altered this agreement by assenting to a transfer of said stock, together with other collaterals then held by appellee belonging to said Investment Company, to Edrington & Lewis and to J. P. Smith to secure other debts, and authorized said Edrington to sell said collateral securities and apply the proceeds in accordance with said agreement made on August 15, 1884. That this change was made in the original contract by appellee Edrington and W. J. Morphy, president of said investment company, without the knowledge or consent of said Smith. That appellee had received several other notes as collateral security for the note sued on from said Investment Company, and had collected of said notes so received the sum of $12,650 which should have been applied to the payment of the note sued on.

In reply to the above defenses pleaded by Smith appellee alleged that it never took or in any manner held the stock or notes as set forth in appellant's answer, and also alleged that the note sued on was in renewal of one formerly executed by the same parties. Appellee admitted that at the time of the execution of the note sued upon it held the stock of the New Mexico Land and Cattle Company to secure another debt then due it by said investment company for the sum of $12,500, evidenced by a note of June 22, 1884, due thirty days after date. That at the maturity of this note it was renewed by the investment company giving a note dated July 25, 1884, for $12,500, payable thirty days after date, with interest at twelve per cent, etc. That this note was not paid by the investment company or any other person. That after its maturity and the institution of this suit appellee sold said stock at public sale by its cashier, after giving notice, and purchased the same through its president. That it still held said stock and had received no payment of said indebtedness of $12,500 except by the said sale, and offered, if allowed by the court, to deliver said stock to appellant upon his payment of said $12,500.

There was evidence in support of the pleas of *non est factum* filed by Fore and Henderson and a finding in their favor. There was a verdict in favor of appellee against appellant and W. J. Morphy for the sum of $9623 principal and interest. Judgment was rendered thereon, from which appellant Smith appeals.

The proof on the trial was substantially as follows: The note as described in the petition being in evidence, appellant J. P. Smith testified that he signed the note sued upon, which was in renewal of a former note for same amount signed by same parties, dated either April or May, 1884, being either a sixty or ninety days note; that the former note was also payable to the Texas Investment Company, Limited; that he signed

the former note at the request of W. J. Morphy for the accommodation
of the Texas Investment Company, Limited, to raise money upon; that
he received no consideration himself for signing said note, and did not
know whether the other makers did or not.   That this note fell due and
the note sued upon was executed in the place of the former to take it up.
That at the time of making the note sued upon witness and W. J. Mor-
phy went to the Traders National Bank and had a talk with H. C. Ed-
rington, the cashier, about it, and that Edrington admitted he knew that
the former note was an accommodation note on the part of Smith; that
it was there talked between witness, Edrington, and Morphy that the
bank held twenty-eight thousand seven hundred dollars of the capital
stock of the New Mexico Land and Cattle Company belonging to the
Texas Investment Company, Limited, to secure a note of said company
to said bank for twelve thousand five hundred dollars, and Edrington
agreed to hold said stock to secure the note sued upon as well as the
twelve thousand five hundred dollar note.

H. C. Edrington, the cashier, testified he remembered the transaction
when the note sued upon was delivered to plaintiff; that it was a renewal
of a former note, and if J. P. Smith or any of the makers were accom-
modation makers he had no knowledge of the fact at the time the note
sued upon was given; when the note was received by the bank defendant
Smith was not present; it was received July 22, 1884; that W. J. Mor-
phy brought the note to the bank already signed and endorsed and took
up the former note; that there was nothing said at that time about hold-
ing the stock as collateral for the note sued upon, as well as the $12,500;
that he (witness) did not at said time or at any other time agree on the
part of the bank to hold the stock as collateral for the note sued on or for
the former note of $7000, and never knew of any such agreement being
made by any one representing the bank, and that the bank held no col-
lateral to secure either of said $7000 notes.   Witness produced a deposit
slip or memorandum made by him at the time of receiving the latter
$7000 note, and stated that at the same time he received a note for $3300
signed by Fore, Morphy & Henderson, and both notes were entered on
same slip, and he also received a note of Britton for $4000 as collateral
for a $3300 note and a balance of another note; that these transactions
occurred at the same time and at the cashier's window, and that Boaz, the
president of the bank, was present; that the handwriting filling blanks
in note was that of the bookkeeper of Texas Investment Company, Lim-
ited; that the first knowledge he had that Smith was accommodation
maker of the note was August 15, 1884, when Morphy told him at the
time he wrote paper of that date.

W. J. Boaz, the president of plaintiff, testified that he was present
when the note was received, and to substantially the same facts stated by
Edrington; that he did not know Smith was accommodation maker;

might have thought so, but there was nothing said about it, and that the stock was held by the bank alone to secure the $12,500 debt; that a few days after the note fell due he went to defendant Smith and asked payment and Smith asked him to bring suit and said nothing about collateral being held for the note; that it was a year after this before he knew or heard of Smith claiming that note sued upon was secured by the stock.

Such is the testimony in support of and denying the alleged agreement set up by defendant Smith between appellant and appellee at the time of the delivery of the note to the latter.

In support of appellant's plea that there was a material change made in the contract entered into at the time of the delivery of the note by an assignment of the collateral security to Edrington for the other debts and the sale of the same, and that the bank ceased to hold said collaterals as agreed upon, appellant introduced in evidence the following paper:

"FORT WORTH, Texas, August 15, 1884.

" The Texas Investment Company, Limited, hereby assigns all surplus collateral held by the Traders National Bank over and above the amount due said bank on discounts made for said Investment Company, Limited, to Edrington & Lewis and J. P. Smith to secure them pro rata on Texas Investment Company, Limited, indorsements to Edrington & Lewis for $5000, dated August 11, 1884, and J. P. Smith's and others' accommodation endorsements for said Texas Investment Company, Limited, for $7000.

"H. C. Edrington is hereby authorized to realize on said collateral and apply as set forth aforesaid, and any surplus to be applied to Smith and Huffman's note to said bank for $6500.

[Signed]          "TEXAS INVESTMENT COMPANY, LIMITED,
                             "W. J. MORPHY, President."

Edrington testified that this instrument was signed by Morphy for the Texas Investment Company; that he gave notice that the New Mexico Land and Cattle Company's stock would be sold on March 6, 1885, and in accordance with this notice he sold to Boaz, the president of appellee bank, who was the highest bidder, said stock for the sum of $8000.

Smith testified that he never gave his consent to said instrument being made, and had no knowledge of its having been made for some time after.

Edrington stated that in the transaction of August 15, 1884, he acted for the firm of Edrington & Lewis, a firm composed of witness and one Lewis, and not for the bank. That none of the collaterals then held by the bank were ever turned over to him to dispose of under said agreement, but that the bank still retained possession and control of them; that the bank had nothing to do with the making of the instrument of August 15, 1884.

Defendant Smith's attorney then asked the witness if he, as cashier of plaintiff's bank, did not make and file for plaintiff a sworn answer in a certain garnishment proceeding wherein the National Bank of Jefferson

was plaintiff and the Traders National Bank was garnishee, wherein he swore among other things that the plaintiff bank did not have in its possession any of the effects belonging to the Texas Investment Company, Limited, on the 29th day of August, 1884.

This was objected to by plaintiff because immaterial and not in contradiction of any evidence given by said witness. The court sustained the objection, and the defendant was not permitted in this connection to introduce the sworn answer of Edrington made in the garnishment proceedings referred to, which it appears from the bill of exceptions was offered to contradict the witness' statement that the bank had retained always possession and control of said stock after it was deposited with plaintiff, and to sustain defendant's plea that said bank had delivered said stock to said Edrington to sell under the agreement between him and the Texas Investment Company already in evidence.

This ruling of the court excluding the proffered evidence is assigned as error. The leading purpose of the testimony offered was manifestly to impeach the witness by showing that he had made contradictory statements with respect to the control and possession by the bank of the shares of stock in the New Mexico Land and Cattle Company.

It is claimed by appellees that the stock held as collateral security was not property or effects subject to garnishment, and hence if the witness had answered to the writ of garnishment that the bank did not have any property or effects of the Texas Investment Company in its possession this would be no contradiction of his statement that it held the stock as collateral security. The statute, however, does make such stock subject to garnishment. Rev. Stats., art. 208; Baker v. Wasson, 53 Texas, 156.

Until the passage of the Act of March 13, 1875 (Gen. Laws, 2d sess., p. 102), shares of stock in incorporated companies were not subject to execution and therefore not liable to garnishment. Price v. Brady, 21 Texas, 619.

The effect of the opinion cited has been destroyed by the act referred to, now substantially embraced in articles 208, 209, 210, Revised Statutes. Article 2297, taken from the same statute, also subjects such stock to execution in the same manner as other personal property. Independently of this, however, upon the plainest principles of the elementary rules of evidence regulating the examination of a witness, we think the testimony was admissible. Edrington had testified that the bank still held the stock deposited with it by the Texas Investment Company to secure the note for $12,500; that none of the collaterals held by the bank were ever turned over to him to dispose of under the agreement of August 15, 1884; that it still retained possession and control of the same. His testimony was also distinct and emphatic to the effect that no such agreement to hold the stock as collateral security for the note, as contended by appellant, was ever made. His evidence related to and was destructive of

the material defenses set up by Smith, was necessarily to a great extent relied upon by the jury, and exerted a controlling influence upon the verdict. Hence, the importance to the defendant of the right attempted to be exercised by him to discredit it under the rules of evidence by showing, if he could, that he made contradictory statements as to the possession by the bank of the stock.

Again, Smith had alleged that the bank had in violation of its agreement parted with and ceased to hold this stock. The sworn answer of Edrington that the bank did not in August, 1884, have possession of any property or effects of the Texas Investment Company tended to sustain this averment. We are of opinion therefore that the evidence excluded should have been admitted, and that the court erred in sustaining the objections of the plaintiff thereto and that the error is such as requires a reversal of the judgment.

The remaining assignments specifying supposed defects in the charge and error in refusing the special instruction requested by appellant require some notice.

The witness Edrington had testified that the note in suit was in renewal of a former note for same amount which matured about July 10, 1884. That the bank never held any collateral security for the note sued upon. That the stock in the New Mexico Land and Cattle Company was held as collateral security for a note of $12,500 due plaintiff by the Texas Investment Company which matured July 25, 1884, and which was renewed for a like amount, to become due thirty days after date. The stock was still held to secure the debt. The price for which the stock sold, $8000, was credited on it.

Witness produced the certificates for 287 shares of said stock, being fourteen for twenty shares each and one for seven shares. These certificates all bore date July 31, 1884, and were issued to and in the name of H. C. Edrington. Edrington testified that when the bank first received the stock it was in one certificate. That some time in the latter part of July, 1884, W. J. Morphy, the president of the Texas Investment Company, Limited, requested him if he could to find a purchaser for said stock, and that it was thought best to have it reissued in small certificates; that as cashier of the plaintiff he sent the certificate to the Hanover National Bank of New York, correspondent of plaintiff, with request to forward to Boston, where the president of the company resided, and have the stock reissued, and if it could be done find a purchaser for it; that the stock was reissued, but no purchaser found, and stock was returned to witness, who called the attention of W. J. Boaz, the president of the plaintiff bank, to the fact that the stock was issued to witness without stating to him as cashier. They were placed with the securities belonging to the bank and kept there, and were held in witness's name for said bank and not otherwise.

J. P. Smith testified that in a stockholders' meeting the Texas Investment Company, Limited, on the 19th of July, 1884, when W. J. Boaz was present, that he then called attention to the fact that he was on a note for said company for $7000 as accommodation maker, which was then held by plaintiff. That he had no knowledge until since this trial that the original certificate of stock of the New Mexico Land and Cattle Company had been returned and new certificates issued to H. C. Edrington, and never consented thereto or to the sale made by Edrington.

Under the foregoing evidence, in connection with the proof first referred to in the opinion, the court charged among other things as follows: "If you believe from the evidence that said note was executed by the defendants, or either of them, without consideration and for the benefit simply of the Texas Investment Company, you will then inquire whether or not at or before the time of making of the note sued upon there was any agreement between the plaintiff and the investment company or either of the defendants that the plaintiff should hold as collateral security for the payment of said note any stock of the New Mexico Land and Cattle Company, and the burden is upon the defense to show by a preponderance of evidence that there was such an agreement; and unless you find from the evidence that there was such an agreement you will find for plaintiff the amount of the note sued upon, including interest as before directed and ten per cent on such amount, against all the defendants you may believe under the instructions given are liable on said note. If * * * the defendants or either of them signed the note sued on as accommodation makers, as. hereinbefore explained, and if you believe from the evidence that at the time of the delivery to the plaintiff of the note sued upon the plaintiff had in its possession the certificates of stock of the New Mexico Land and Cattle Company mentioned, * * * and that the same belonged to the investment company and was held by the plaintiff bank as collateral security for another debt due to the plaintiff by said .investment company; and if you believe from the evidence that at the time of the delivery of the note sued upon the plaintiff by its officers accepted said note and agreed with the defendants or either of them to hold said stock as collateral security for the note sued upon, and if you further believe that the plaintiff without the consent of the defendant did permit or cause said stock to be surrendered and other certificates issued to one H. C. Edrington for a different purpose than the security of the debts for the payment of which it was so agreed that said stock should be held, then and in that event the defendants, if accommodation makers of said note and not consenting thereto, would be released, and you should find for them or such of them as you may believe from the evidence were in fact accommodation makers and who did not consent to such disposition of said stock.

"You are instructed that where shares of stock in a corporation are pledged as collateral security for the payment of a debt that the pledgee or person holding such stock has the right to surrender the certificate. pledged and have other certificates for the same number of shares issued in his name, and where the pledgee is a bank the certificate may be issued to and held by its cashier. If therefore you believe from the evidence that there was an agreement between the plaintiff and the defendants, or either of them, that said shares of stock should be held by the plaintiff as collateral for the payment of the note sued upon, and if you further believe that the same were by the plaintiff surrendered and other certificates issued to one H. C. Edrington, yet if you believe he intended thereby to hold said stock and did hold the same under said agreement, if any, that the change in the certificates so made would not be in law an alteration or change of the contract, and would be no defense to the makers of the note for which such security was held."

The complaint made of this charge is that the jury were in effect told that if plaintiff agreed with defendant to hold the shares of the stock to secure the note and did not, this would be a violation of the contract and would release the sureties, instead of instructing them that the alteration of the agreement to hold the stock made by Edrington and the Texas Investment Company, assented to by the plaintiff, would release the makers of the note if known to plaintiff to be accommodation makers, and it failed to submit the issue of an alteration of the agreement.

The special charge requested by appellant, after stating the defenses set up in his answer, was as follows:

"If you believe that the makers of the note sued on were such accommodation makers, and that this was known to the cashier or president of the plaintiff bank at and before the bank received said note; and if you also further believe from the evidence that at and before said note was delivered to plaintiff it had the shares of stock as claimed by Smith, and that at and before Smith signed said note the plaintiff, through its cashier, agreed with Smith and the president of the Texas Investment Company, Limited, for said company to hold such shares also as security for the note sued upon, and after so doing, if it was done, the Texas Investment Company, Limited, by and through its president W. J. Morphy, made the instrument read in evidence to you dated 15th of August, A. D. 1884, without the knowledge or consent of Smith, and that afterwards H. C. Edrington, acting under said agreement and being cashier of said bank, possessed said shares of stock, sold or attempted to sell under said writing dated the 15th day of August, 1884, then and in that event you should find for the defendant Smith; but if you should not so find, then as to this branch of the case you will disregard said defense."

It will be noticed that the jury were plainly and properly instructed that if they found that no such agreement to hold the stock as security

for the note sued on as claimed by Smith was entered into they would find for plaintiff. Under the facts, as they were authorized to do, the jury found that no such agreement was made. Consequently the defenses relied on by appellant of a violation and alteration of the contract or agreement which were involved in the foregoing instructions became unimportant. There could be no violation or change of an agreement which the verdict of the jury necessarily implied never existed. The failure therefore to submit the issue contained in the special instruction is immaterial upon this appeal and would not authorize, we think, a reversal. . But as the error referred to under the first assignment considered requires a reversal, and as it can not be known what the verdict may be upon another trial, it is proper to say that the issue embodied in the special instruction should under similar facts be presented to the jury. In all other respects we think the charge given is a correct presentation of the law of the case.

For the error mentioned under the first assignment in excluding the evidence offered by defendant, we think the judgment should be reversed and the cause remanded.

<em>Reversed and remanded.</em>

Adopted June 25, 1889.