## J. P. SMITH v. TRADERS NATIONAL BANK.

### No. 3112.

1. **Charge—Issues—Practice.**—See pleadings and evidence involving issues upon which it was proper and useful for the court to charge the jury. The pleadings raise the issues.

2. **Charge.** — When the court has given substantially the charge asked by a party upon his defense, the refusal to repeat the charge is no ground of complaint. See example.

3. **Charge Upon Weight of Evidence.** — See a charge held not to be upon the weight of evidence. It was substantially that a paper in evidence not signed by the plaintiff would not bind it unless adopted by it.

4. **Testimony to Offer of Compromise.**—Suit upon a note; defense that collaterals held to secure it had been disposed of without consent of maker. He was examined in his own behalf as witness, and on cross-examination was asked if he had ever made a proposition to pay off a prior indebtedness also secured by the collaterals. Objection upon the ground that it was an offer to compromise. The objection was overruled, and he answered that he had never made such offer. *Held*, no error was committed in compelling the answer.

5. **Remarks of Court Upon Examination of Witnesses.** — It is practically impossible for the trial court to make its rulings on questions arising during the trial without saying something in explanation. See remarks by court in the introduction of testimony held correct and proper.

6. **Competent Testimony to Value of Stock of a Company.**—It was competent upon the issue of the value of the stock of a corporation which was held as collateral to prove that at Boston, where its headquarters were kept, only about one-fifth of their face value could be raised upon shares of the corporation.

7. **Secondary Evidence—Original Out of State.** — We are of opinion that the original of a letter relevant to the issues having been shown to be beyond the jurisdiction of the court, a copy was competent.

8.  Cross-Examination—Explanation.—As a basis for impeaching a witness his affidavit in a garnishment was read.   It was not error to permit the witness in explanation to state that the answer and affidavit had been made on advice of counsel.

9.  Disposition of Collaterals.—If the holder of a note should dispose of collaterals without consent of the maker of the note his rights would not be affected by such disposition of them.

APPEAL from Tarrant.   Tried below before Hon. R. E. BECKHAM. The opinion states the case.

*A. M. Carter, R. M. Wynne,* and *S. L. Samuels,* for appellant, cited Railway v. Greenlee, 62 Texas, 349; Ayers v. Harris, 64 Texas, 299; Rosenthal, Meyer & Co. v. Middlebrook, 63 Texas, 337; Loving v. Dixon, 56 Texas, 75; Sayles' Civ. Stats., art. 1317, note 3; Whart. on Ev., sec. 93.

*J. Y. Hogsett* and *S. P. Greene,* for appellee, cited Smith v. Bank, 74 Texas, 464; Mora. on Priv. Corp., sec. 245; Veck v. Holt, 71 Texas, 717; Bank v. Wood, 71 N. Y., 405; Bank v. Alberger, 71 N. Y., 606; Colbrook on Coll. Securities, 275.

HENRY, ASSOCIATE JUSTICE.—This suit was brought by the appellee to recover upon a promissory note for $7000, charged to have been made payable to the order of the Texas Investment Company, Limited, by J. P. Smith and the firm of Fore, Morphy & Henderson, composed of Walker Fore, W. J. Morphy, and R. M. Henderson.

The death of Fore was suggested, and the cause was dismissed as to him.   There was a verdict in favor of the defendant Henderson, and a judgment upon a verdict against the defendants Smith and Morphy. The defendant Smith alone prosecutes this appeal.

The defense of Smith was in substance, that he executed the note only for the accommodation of the investment company, as was known to the plaintiff, "and that at the time of the execution and delivery of the note sued upon, the investment company owned $28,700 stock in the New Mexico Land and Cattle Company, of the value then of $28,-700; that said stock at the time of the making of the note was in possession of said bank; that at the time the note was received by the bank and discounted, it was agreed by and between the plaintiff and the Texas Investment Company, and Smith, that said bank should and would hold said stock of said New Mexico Land and Cattle Company as security for the note sued upon in this case; that Smith was only a surety for the investment company on said note sued upon; that the investment company, in fact, was the principal obligor in said note as between said investment company and the defendant, and that defendant would not have signed the note but for the fact of said agreement

requiring the holding of said stock as security for the payment of the note, which was well known to the bank at and before it received and discounted the same and made the said agreement to hold the said shares; that the investment company and plaintiff and W. J. Morphy, about the 15th of August, 1884, without Smith's consent, materially changed the contract made by the investment company and the plaintiff and Smith regarding the taking and holding of said New Mexico Land and Cattle Company stock as security for the note sued upon, in that about the 15th of August, 1884, the investment company assigned the said New Mexico Land and Cattle Company stock, as well as the other collaterals then held by said plaintiff belonging to said investment company, to Edrington & Lewis and J. P. Smith to secure them pro rata on investment company indorsements, viz., to Edrington & Lewis for $5000, dated August 11, 1884, and J. P. Smith and other accommodation indorsers for said investment company for $7000; that at the same time said investment company by its president W. J. Morphy, with the consent of said bank, authorized H. C. Edrington to sell said collateral, including the New Mexico Land and Cattle Company stock, and to realize upon the same and apply as set forth in agreement dated August 15, 1884; that the bank assented to all this arrangement between the investment company and Edrington & Lewis and H. C. Edrington, and that all this was without the knowledge or consent of Smith, and was such an alteration as released and discharged him as surety, etc.

"As to the diversion of this stock, Smith charged that in pursuance of this arrangement H. C. Edrington possessed the said stock and sold it under and by virtue of this last named agreement, and that the bank ceased to hold said New Mexico Land and Cattle Company stock as collateral security, as it had agreed to do under the agreement to hold as security, etc.; that the stock was sold for about $6000 and delivered to the purchaser; that this was a fraud upon Smith's rights, as well as an alteration of the contract, and he claimed damages for the fraud."

The bank filed a supplemental petition, "denying that it ever took or in any manner held the said stock, as set forth in Smith's answer, and alleging that the note sued upon was in renewal of one formerly executed, dated about June 22, 1884, due thirty days after date, with interest from maturity at 12 per cent per annum. It admitted that at the time the note sued upon was executed it held the stock of the New Mexico Land and Cattle Company as security to secure another debt then owing to said bank by said investment company, for $12,500, which was evidenced by a promissory note dated June 22, 1884, due thirty days after date, for said amount, bearing 12 per cent interest per annum; that at the maturity of this note it was renewed by the investment company giving a new note, dated the 25th of July, 1884, for $12,500, due thirty days after the date thereof, bearing a like interest; that this note

was not paid either by the investment company or by any other person, and that after the maturity of said note, and after the institution of this suit, the plaintiff bank had said stock sold at public sale by its cashier, after giving notice, and purchased the same by its president."

The first and second assignments of error read as follows:

"1. The court erred in charging as follows: 'And if you further believe from the evidence that the plaintiff, without the consent of defendant Smith, did permit or cause said stock to be surrendered and other certificates issued to H. C. Edrington for a different purpose than the security of the debts for the payment of which it had been so agreed that such stock should be held, then and in that event you should find for said Smith;' because there was no issue in the pleadings made that such issuance and such return of stock would release said Smith, and it was a charge upon matters not in issue before the jury, and calculated to and probably did mislead them in the determination of the question involved in the case.

"2. 'You are instructed, however, that where shares of stock in a corporation are pledged as security for the payment of a debt, the pledgee or person holding such stock has a right to surrender the certificates pledged and have other certificates for the same amount and number of shares issued in the name of the pledgee, and where such pledgee is a bank, the certificates may be issued to and held by its cashier; and if, therefore, you believe from the evidence that the plaintiff by its president or cashier had agreed to hold said stock as security for the payment of the note sued on, and that it permitted said stock to be surrendered and other stock certificates issued in the name of said Edrington, yet if you further believe that such change in the form of said stock was made without any intent to use said stock for any other purpose than that for which it was so agreed to be held, the defendant would not thereby be released from liability on said note;' because said portion of said charge was upon matters upon which no issue had been made by the pleadings; and second, the latter portion of said part of the charge was misleading, in this, that it submitted the question that if the stock so issued was not issued for any other purpose than that for which it was so agreed to be held, etc., leaving the jury to infer that it might be so held by the first agreement, or by the latter agreement, or by some other agreement, not specifying what agreement."

We think that the issues referred to in the assignment were sufficiently involved in the case, especially in the evidence, to make a charge upon them proper and useful, and we do not think that the appellant has any just ground for complaining of the charge as given.

The third assignment was that there was error in giving the following charge: "You are further instructed, that if you believe from the evidence that defendant Smith signed the note sued upon as accommodation maker, and that the plaintiff by its president or cashier had

notice of the fact that said Smith had signed the same only as accommodation maker, and if you further believe that at the time of making the same it was agreed by the plaintiff bank that it should hold the stock named as collateral security for the payment of the same, and that afterward the Texas Investment Company by its president executed the instrument in writing dated August 15, 1884, read in evidence, and that H. C. Edrington, the cashier of the plaintiff bank, accepted said transfer, and thereafter held said stock for the purposes named in said transfer of August 15, 1884, without the knowledge and consent of the said Smith, and that he sold or attempted to sell said stock under said transfer, you should find for said Smith;" because it made Smith's defense depend upon the fact that Edrington sold or attempted to sell said stock under the agreement or transfer dated August 15, 1884, which had been read in evidence, when it was immaterial whether he sold or ever attempted to sell under the agreement or transfer dated August 15, 1884. The material question was whether or not there had been an alteration in the contract originally entered into to hold the stock as collateral security for the note sued upon, without Smith's knowledge or consent.

The agreement referred to reads as follows:

"Fort Worth, Texas, August 15, 1884.

"The Texas Investment Company, Limited, hereby assigns all surplus collateral held by the Traders National Bank over and above the amount due said bank on discounts made for said investment company, limited, to Edrington & Lewis and J. P. Smith, to secure them pro rata on Texas Investment Company, Limited, indorsements, to Edrington & Lewis, for $5000, dated August 11, 1884, and J. P. Smith and others accommodation indorsements for said Texas Investment Company, Limited, for $7000.

"H. C. Edrington is hereby authorized to realize on said collaterals and apply as set forth aforesaid, and any surplus to be applied to Smith and Huffman's note to said bank for $6500.

"Texas Investment Company, Limited,
        "W. J. Morphy, President."

We do not think that the appellant could have been prejudiced by this charge, but rather that it was favorable to him. He requested the court to give substantially the same charge upon the point as the one now complained of.

The fourth assignment is that the court erred in charging the jury as follows:

"1. The jury are instructed that the plaintiff, the Traders National Bank, is no party to the agreement introduced in evidence, dated August 15, 1884, and that the fact that H. C. Edrington was a member of the firm of Edrington & Lewis, and at the same time cashier of the

bank, does not make the same the contract of the bank or binding upon it, and unless you find that the bank adopted the said agreement and turned the stock of the New Mexico Land and Cattle Company over to Edrington to sell under said agreement, the same would not in any manner affect the rights of the plaintiff; because said charge was diametrically opposed to that portion of the main charge of the court complained of in assignment number 3 and therein quoted.

"2.   Because it is a charge upon the weight of evidence, in this, that it indicated to the jury that they should not place any importance upon facts in evidence that Edrington was cashier of the bank, had originally received the stock as collateral security from the Texas Investment Company, Limited, had also negotiated with the Texas Investment Company, Limited, for the transfer dated August 15, 1884, and that he had practical control of said stock during the whole time, and that therefore they should not consider these facts as indicating the consent of the bank, but requiring that the jury should find, from evidence independent of these facts, that the bank had adopted the agreement or transfer dated 15th August, 1884, and had in fact turned the stock of the New Mexico Land and Cattle Company over to Edrington to sell under that agreement; otherwise they should find for the plaintiff. There was no averment in the answer that the bank had adopted said agreement after its making, but that the bank consented to it was averred."

The jury no doubt understood the court to say that the bank had not signed the agreement referred to, and did not appear upon its face to be a party to it.   We are not able to see the inconsistency complained of between the charges; nor do we think the last one subject to the objection of being a charge upon the weight of evidence.

The fifth assignment of error reads:   "The court erred in not giving defendant Smith's special charge number 2, as follows:   'If the jury find that prior to or at the time of the delivery of the note sued on it was known to the plaintiff that the said note was executed by the defendant J. P. Smith for the accommodation of the Texas Investment Company, Limited, and they further find that the note sued upon was given as a renewal note for one previously given by the same parties to the plaintiff, and that the said note for which the last was given was also an accommodation note, and that fact was known to the plaintiff at the time the last note was given, then said makers are entitled to all benefit and defenses of accommodation makers of the note sued on, in like manner as if the said note sued on had been the original contract, and not a renewal note.   The evidence showed that the note was a renewal of a former note, and there was evidence tending to show that the bank knew when the former note was executed that it was an accommodation note, and no charge upon this branch of the case was given by the court."

We think the charge that the court gave sufficiently presented to the jury the rights of appellant as an accommodation maker of the note in suit, and we can not see that he was deprived of any right by the refusal to give the charge referred to.

The next assignment of error insisted upon reads as follows: "The court erred in compelling the defendant Smith on cross-examination, over the objection of his counsel, to state that he never offered to pay the bank the said note of $12,500 if they would turn over to him said New Mexico Land and Cattle Company stock."

On cross-examination, Smith was asked if he had ever made any offer or proposition to pay off the $12,500 note secured by collateral in order to hold the collateral. This question was objected to on behalf of Smith, because it was an offer of compromise or settlement, and was not proper to be brought before the court or jury. The court overruled the objection and required Smith to answer. Smith answered, "that he never offered it; never was requested to do it; that the officers of the company did not offer to turn over the stock if he would repay the money they were out, nor if he would pay the $12,500 note; that Edrington wanted $5000 for himself; that was spoken about. He said Edrington & Lewis had some claim against the company, and he (Smith) thought some member of the bank, probably Mr. Edrington, offered that, if Smith would assume all the liabilities, including the $5000 to Edrington & Lewis; did not think Boaz made the proposition to him, saying nothing at all of Edrington & Lewis' claim; no such a proposition was ever made to him."

We do not think that the evidence should have been excluded upon the objection made to it—that it was an offer to prove an offer to compromise. Neither the question nor the answer appear to come within the rule on that subject.

The ninth assignment of error is: "The court erred in not allowing the defendant Smith to prove the amount of property owned by the New Mexico Land and Cattle Company and the amount of its full paid shares of capital stock; and the court also erred in its remarks to the jury to the effect that the value of the assets of a corporation was a circumstance tending to show what its stock was worth, but that it was of no value whatever unless the amount of indebtedness against the corporation was shown and the amount of the stock issued; and when the court's attention was called to this by plaintiff's objection to the ruling and remarks of the court, the court should have withdrawn his remarks from the jury."

On the trial of the cause the appellant Smith offered to prove the value of the stock of the New Mexico Land and Cattle Company by showing the amount of its property. W. A. Garner was introduced, and testified, "that he never owned any stock in the New Mexico Land and Cattle Company; knew about the company, its property, etc.;

knew what he considered the value of its stock in 1884 and 1885; knew the company owned land and cattle; never saw the deeds; that they had in round numbers 400,000 acres of land in New Mexico, purchased by the company at $1 an acre; that it was worth what they paid for it. Witness had sold them cattle for the Texas Investment Company; sold them about 10,000 head of cattle, a lot of horses, and outfit; that they owed no debts at the beginning of the thing. Witness thought the company was organized and began business in 1883."

The plaintiff objected to this testimony as not the proper way of proving the value of the stock. The court remarked, that the value of the assets of a corporation was a circumstance tending to show what its stock was worth; but that it was of no value whatever unless the amount of indebtedness against the corporation was shown, and the amount of stock issued. The defendant Smith offered to prove the amount of the stock of the company to have been 8000 shares of $100 each, and a capital stock of $800,000 fully paid up. The defendant maintained that the court was not authorized to presume that the company owed a dollar. The court then remarked, that he would exclude from the consideration of the jury the statements of the witness Garner as to what the company was reputed to have owned in the way of land and cattle. The defendant's counsel called the court's attention to the fact that the witness did not state what was "reputed." The court then said, "Well, as to that, what he sold he can testify to."

It is practically impossible for the court to make its rulings on questions arising during the trial without saying something in explanation. We can see nothing in what was said on this occasion to justify a reversal of the judgment. On the contrary, the remarks of the judge, as well as his rulings on the question, seem to us to have been both correct and appropriate.

The tenth assignment of error is as follows: "The court erred in allowing the witness W. A. Garner to testify, over the objection of the defendant Smith, as to borrowing money for Stinson on the stock of the New Mexico Land and Cattle Company, and that $6000 was all that he was able to get on the whole of Stinson's stock in Boston, where the headquarters of the company were."

Garner testified: "It is a fact that $6000 was all that I was able to get on the whole of Stinson's stock (nominally $27,500) in Boston, where the headquarters of this company were. I got all the money I could on it. If my recollection serves me right that was in the spring of 1884. The principal officers of the company lived in Boston, and a majority of the stockholders resided there, and nearly all of the stock was held there. I used the best endeavors to get all the money I could for Stinson."

There was no error in receiving this evidence upon the issue of the value of the stock.

Edrington testified, on the trial, that he had forwarded the original certificate of stock pledged by the Texas Investment Company, Limited, to his New York correspondent to be reissued, and that it was a mistake in having it reissued to himself. The plaintiff then offered to read in evidence a letter-press copy of a letter purporting to have been written by Edrington to J. M. Donald, the correspondent of the Traders National Bank in New York. Defendant Smith objected to said paper because it was hearsay, "being no more than a declaration made by the witness Edrington, being simply a conversation in writing between Edrington and the Hanover National Bank of New York, and because it was not the original letter, and not the best evidence, and because the plaintiff had made no effort to produce the original." The court overruled the objection, and the letter was read to the jury, as follows:

*"J. M. Donald, Cashier, New York:*          "JULY 23, 1884.

"DEAR SIR—I inclose certificate of stock No. 19 for 287 shares of the capital stock of the New Mexico Land and Cattle Company, which I desire you to forward to your correspondent in Boston, Mass., and surrender in exchange for fourteen certificates of $2000 and one of $700, all to be issued in my name. Please have your correspondent to give the matter prompt attention, and return to us through your bank.

"Yours truly,          "H. C. EDRINGTON, Cashier."

The purpose of introducing the letter was to prove what directions were given in regard to the issuance of the stock referred to. The objections that the evidence was hearsay and a mere declaration of the witness were not well taken or applicable.

Upon the question as to whether secondary evidence may be introduced when the original writing is beyond the jurisdiction of the court and without notice or any evidence showing an effort to produce the original writing, we have found some conflict in the authorities. We do not believe that the judgment in this cause should be reversed because of the introduction of the copy of the letter, even if we were of the opinion that it was improperly admitted. We do not, however, rest our conclusion upon such ground, but we are of the opinion that, the original letter having been shown to be beyond the jurisdiction of the court, the copy was correctly admitted. Greenl. on Ev., sec. 558; Burton v. Driggs, 20 Wall., 134; Shepard v. Giddings, 22 Conn., 282; Brown v. Wood, 19 Mo., 475; Eaton v. Campbell, 7 Pick., 10.

H. C. Edrington, upon cross-examination, testified: "That on the 17th December, 1884, he made answer in a certain garnishment case of the National Bank of Jefferson v. The Texas Investment Company, Limited, et al., under oath for the Traders National Bank, garnishee, wherein he stated that the Traders National Bank was not at the time of said answer, nor at the time of the service of said writ of garnish-

ment, nor at any time since said service, indebted to said Texas Invest-
ment Company, Limited, in any amount; that it had not then, and had
not at the time of the service of the writ of garnishment, nor at any
time since, any of the effects of said Texas Investment Company in its
possession."

On redirect examination the witness testified: "That at the time of
making the answer the bank held the stock of the New Mexico Land
and Cattle Company as collateral to secure debts that the Texas Invest-
ment Company owed the Traders National Bank." He was then asked
by plaintiff's counsel why he made the answer that the bank had no
effects of the Texas Investment Company, Limited. Counsel for de-
fendant Smith objected to the question as irrelevant and immaterial.
The court ruled that the witness might explain the statement made,
and the witness testified as follows: "The reason I made this answer
was that at that time the Texas Investment Company owed the Traders
National Bank a little balance—that is, it was overdrawn, I think, a
dollar or two. We did not have a cent of their money. If we had, I
would have answered that we had their money. These collaterals
the Traders National Bank held were choses in action, and were not
effects of the Texas Investment Company, and I answered accordingly.
When the writ of garnishment was served on the Traders National
Bank, I took it to the attorneys of the bank, Messrs. Hogsett & Green."

Counsel for defendant Smith interposed an objection to any conver-
sation that the witness had with any one prior to making said answer
in garnishment. The court overruled the objection.

The witness continued as follows: "I went to the counsel of the
bank and stated the status of the investment company to the bank,
setting out what it held as collateral security, and counsel advised me
that this collateral security was not effects." Counsel for defendant
Smith interposed an objection to the witness testifying to any statement
made by counsel. The court overruled the objection. The witness
continued: "That it was not effects, and they prepared this answer
for me to sign, and I signed it on their advice; that the collaterals the
Traders National Bank held were not the effects of the Texas Invest-
ment Company, Limited. They told me that the Supreme Court had
so held."

The sole purpose of the introduction of the answer of the garnishee
was to impeach the credibility of Edrington as a witness. It was neces-
sary to lay a predicate for its introduction by questioning him in re-
gard to it, and the object of questioning him was to furnish him an op-
portunity of explaining it. It would have been an error not to permit
his explanation to go to the jury for what it was worth along with the
answer of the garnishee. Smith v. Bank, 74 Texas, 464.

We deem it but proper to remark in conclusion, in regard to the
legal effect of the agreement of August 15, 1884, which was signed by

the investment company alone, that if the collaterals therein referred to were then already pledged as security for the payment of Smith's note, as he contends and the evidence shows they were, and if, as Smith contends and the evidence shows, that agreement was made without his knowledge or consent, it can not be held to have diminished his security or to have in any manner affected his rights. The evidence shows that the collaterals remained under the control of the bank, and that they were finally sold for the benefit of the demand which they were originally deposited to secure, and which had precedence of the note in controversy, without producing enough to satisfy that demand, and that there was no surplus that could be devoted to said note or any other demand.

The judgment is affirmed.

*Affirmed.*

Delivered November 27, 1891.