## LINDSAY v. WOODS et ux.
### No. 3388.

Court of Civil Appeals of Texas. Amarillo.
April 9, 1930.

Claud C. Westerfeld, of Dallas, for appellant.

S. P. Sadler, of Dallas, for appellees.

JACKSON, J.

This suit was instituted by Mrs. Pearl C. Lindsay and her husband, W. T. Lindsay, as plaintiffs, in the district court of Dallas county, Tex., against the defendants, John W. Woods and wife, Mrs. John W. Woods.

On October 8, 1928, with leave of the court, Mrs. Pearl C. Lindsay filed a first amended original petition, in which she alleged that she was married to W. T. Lindsay in October, 1927, and had never been divorced from him; that her husband, about May 1, 1928, permanently abandoned and deserted her and moved to the state of Mississippi, where he has since continued to reside; that the abandonment of plaintiff by her husband was caused by the acts and conduct of the defendants, and he refuses now to continue with her as a party plaintiff in this suit. She asks that she be permitted to prosecute her suit alone, without the joinder of her husband herein.

She alleged that in January, 1917, she was lawfully married to M. Cammack, from whom she was divorced in 1926; that while she lived with M. Cammack as his wife, she adopted a baby girl and named her Virginia Cammack; that soon thereafter, the defendants began threatening her and, in various ways, tried to get her to give up and abandon the adopted child, which she refused to do.

That the defendants insisted on and assisted her in getting a divorce from her first husband, from whom she received, in her property settlement with him, $2,500 in money and $1,800 in property.

That after the divorce was granted, she visited a sister at Sweetwater, Tex., and another at Dalhart, Tex. That the defendants, by misrepresentations made to her sister at Dalhart, forced plaintiff to leave her sister's home and she returned to Amarillo. That her former husband assisted her in getting her a room at Amarillo, but the defendants, because she would not abandon her adopted child, caused her former husband to have her charged, in the county court of Potter county, Tex., with lunacy, arrested, and placed in jail. That she was promptly acquitted of said charge, and the defendants caused her said former husband to again have her arrested on a complaint, charging her with lunacy, but said charge was dismissed.

That she secured a position in Amarillo, and went to work, but the defendants continued to threaten her and tell every one that she was insane, to cause her discharge. That her continued persecution by the defendants, incarceration in jail on charges of lunacy, and misrepresentations to her friends that she was insane, caused her friends and acquaintances to shun her and caused her great humiliation; that she left Amarillo and took her adopted baby to her mother's home at Sherman, Tex., in December, 1926, where she remained until February 14, 1927, when, on account of the continued threats of the defendants to have her charged with lunacy, she left her mother's home and went to Fort Worth.

That the defendants, on the 15th of February, 1927, filed a complaint against her in the county court of Tarrant county, Tex., charging her with lunacy; had her arrested and placed in the Arlington Heights Sanitarium, where she was not allowed to communicate with any one, consult a lawyer, or secure witnesses. That she was taken from the sanitarium to the courthouse, and the defendants, with other witnesses, testified against her in a lunacy trial, on March 1, 1927, but she was found to be of sound mind and acquitted on her own testimony.

That the defendants continued to persecute the plaintiff, and she finally left Fort Worth and went to Oklahoma City, where such persecution continued, and she returned from there to Dallas, Tex., in company with Mrs. Reece, who lived at Dallas.

That after she reached Dallas, the defendants had her confined in an insane asylum, and while therein or just prior thereto, her adopted baby was taken from her through the fraud and connivance of the defendants, who succeeded in having the district court of Dallas county adjudge her adopted child to be dependent and awarded to other parties, after which she was released from the sanitarium.

That she immediately employed an attorney to institute proceedings to regain her adopted child, and the defendants promptly renewed their threats that if she did not give up her adopted baby, they would again prosecute her for insanity; that she continued her efforts through the courts to regain possession of said child, and the defendants, on April 21, 1928, filed a complaint in the county court of Dallas county, again charging her with lunacy. That the day the case was set in the district court, to determine whether or not she should recover her adopted child, the defendants filed another complaint against the plaintiff, again charging her with lunacy, and had her arrested.

That she was thereafter tried on said complaints, found of sound mind, and acquitted.

That on account of the conduct of the defendants and their false statements and rumors, charging her with lunacy, and having her incarcerated on said charges, and having

her illegally confined in sanitariums, she had been forced to expend all her money and property; that the defendants took from her the money she had left when she was placed in the sanitarium at Dallas, and expended it to defray her expenses while she was so illegally imprisoned.

That since 1926, the defendants have willfully and maliciously, and without probable cause, persecuted the plaintiff; contrived the destruction of her mind, character, and reputation; degraded her in the eyes of her friends and associates; exposed her to the hate and ridicule of the public; embarrassed and humiliated her; which caused her much trouble and expense.

That because of the conduct of the defendants, she was deprived of her friends; her second husband was induced to abandon and desert her; she was imprisoned in the Arlington Heights Sanitarium from February 15, 1927, to April 4, 1927; confined in the Timberlawn Asylum at Dallas from November 25, 1927, to January 26, 1928, illegally and without authority of law; has been prevented from obtaining and keeping employment, and has suffered great mental and physical pain, embarrassment, and humiliation, for all of which she seeks to recover $25,000 actual and $25,000 exemplary damages.

She alleges, in detail, facts which present a cause of action for slander, malicious prosecution, false imprisonment, and causing her second husband to abandon and desert her.

On June 14, 1929, the defendants, with leave of the court, filed their second amended original answer in this case, pleading a general demurrer, numerous special exceptions, a general denial, and specially alleged that the plaintiff was not mentally capacitated to have and maintain the suit against them, because she was at the date of the filing of the suit, and still is, of unsound mind.

The case was tried to a jury, and at the conclusion of the testimony, the jury, in compliance with a peremptory instruction of the court, returned a verdict against the plaintiff and in favor of the defendants.

The court, in compliance with the directed verdict, entered judgment that the plaintiff take nothing by her suit and that the defendants go hence without day and recover of her all costs by them incurred; that it appearing to the court that the suit was originally filed by W. T. Lindsay, joined by his wife, Pearl C. Lindsay, and that said W. T. Lindsay refused further to prosecute said suit. W. T. Lindsay was dismissed from said suit and the defendants allowed to recover from him all costs incurred by reason of the filing of the suit.

From the judgment in favor of the defendants and against Pearl C. Lindsay, she prosecutes this appeal.

The appellant assigns as error the action of the trial court in excluding her testimony to the effect that appellees had written letters to third parties in the state of Oklahoma, which appellant had read, stating that she was of unsound mind, violently insane, had tried to commit murder, and that they wanted to take from her the child she had adopted.

The appellees objected because such testimony was a conclusion of the witness; was hearsay; that the letters were the best testimony, and no predicate had been laid for the admission of secondary evidence.

The objection that the testimony was a conclusion of the witness is without merit. The witness would have testified to statements of the appellees, contained in the letters, and any conclusion expressed in the language of the letters was the conclusion of appellees and not the conclusion of the witness.

The law is settled that in all cases, the best evidence, of which the nature of the case admits, must be adduced, but it is equally well settled that secondary evidence of the contents of a written instrument which is beyond the jurisdiction of the court may be offered. "The objections that the evidence was hearsay, and a mere declaration of the witness, were not well taken or applicable. Upon the question as to whether secondary evidence may be introduced, when the original writing is beyond the jurisdiction of the court, and without notice or any evidence showing an effort to produce the original writing, we have found some conflict in the authorities. We do not believe that the judgment in this cause should be reversed because of the introduction of the copy of the letter, even if we were of the opinion that it was improperly admitted. We do not, however, rest our conclusion upon such ground, but we are of the opinion that, the original letter having been shown to be beyond the jurisdiction of the court, the copy was correctly admitted." Smith v. Traders' Nat. Bank, 82 Tex. 368, 17 S. W. 779, 782.

The predicate for the introduction of the contents of a letter addressed to a nonresident of the state, who is not a party to the suit, may be shown by parol, and the presumption is that such letter is in the possession of the party residing out of the state, to whom it was addressed. Dix v. Jackman, Sheriff, et al. (Tex. Civ. App.) 37 S. W. 344. "If the letter had been in another state, it is well settled that it would have been beyond the jurisdiction or power of the trial court to compel its production, because its process of subpoena duces tecum can in no case run beyond its own state." Sayles v. Bradley & Metcalf Co., 92 Tex. 406, 49 S. W. 209, 210. "Where letters and telegrams are beyond the jurisdiction or process of the trial court, it

is no error to admit secondary evidence of their contents." Texas, G. & N. Ry. Co. et al. v. Berlin (Tex. Civ. App.) 165 S. W. 62, 63.

█ The testimony offered, if true, discloses that the letters were addressed by appellee to third parties living in the state of Oklahoma; that appellant had read the letters and would have testified that they contained the statements which were excluded. "Our courts have repeatedly held, in adhering to the English doctrine, that there are no degrees in secondary evidence." Barclay v. Deyerle, 53 Tex. Civ. App. 236, 116 S. W. 123, 125, and authorities cited.

In our opinion, this testimony should have been admitted.

The appellant challenges as error the action of the trial court in directing a verdict against her, because the pleadings and the evidence presented issues of fact which should have been submitted to the jury for its determination.

The record discloses that about two years before plaintiff was divorced from her first husband, she adopted a baby girl; that while her suit for divorce was pending, Mr. Woods advised her that she would have to give up the adopted baby or they would force her to do so.

That after she was divorced, she visited a sister at Sweetwater, and one at Dalhart, from where she returned to Amarillo; that while in Amarillo, she was placed in jail, taken to the courthouse and tried; that later she was rearrested and tried again; that in December, thereafter, she, with her adopted baby, visited her mother at Sherman, Tex., where she remained until February 14, 1927.

That from there she went to Fort Worth, and stopped at the Westbrook Hotel; that on the 15th of February, or the next day, officers, accompanied by Mrs. Woods, went to the hotel, arrested the appellant on a warrant issued out of the county court of Tarrant county, Tex., based upon a complaint sworn to by Mrs. Woods, charging the appellant with being a lunatic. That appellant was taken from the hotel to the Arlington Heights Sanitarium, a private insane asylum, and subjected to various tests to determine whether she was sane or insane. That on March 1, thereafter, she was tried in the county court of Tarrant county, Tex., found to be of sound mind, and discharged. That she voluntarily returned to said sanitarium, with the knowledge of Mrs. Woods, for the purpose of determining fully and finally whether she was sane.

That on March 5, after her trial on March 1st, Mrs. Woods filed another sworn complaint in the county court of Tarrant county, Tex., charging appellant with insanity. That on April 5 this complaint was dismissed by the court without a trial.

That in April the appellant left said sanitarium and lived in an apartment in Fort Worth, until September, 1927. That while living in said apartment, she received a letter from Mrs. Woods, stating that she would have to give up the adopted baby, and advised her to take her money and go to a mental institution. That later, appellant visited her sister at Dalhart, where she remained, pleasantly, for eight weeks, and until Mrs. Woods wrote said sister that appellant was insane and that she had better get rid of her as she was liable to kill her.

That on account of said letter, appellant had to leave Dalhart, and went to Oklahoma, and after a short while went from there to Dallas, with Mrs. Reece, who lived in Dallas. That appellant stopped in Dallas at the Scott Hotel, and from there went to a maternity home, at which place she was arrested by an officer, in company with Mr. Woods, and carried to the Timberlawn Sanitarium, locked up, and kept confined with insane women from November 26, 1927, to December 24, 1927. That she was not allowed to come downstairs; that she wrote letters to friends and also to her second husband, but was required to give them, unsealed, to the authorities at the sanitarium, and received no reply to any of her letters; that she was not allowed to communicate with any one, while there, by letter or otherwise; that she was told that a lunacy case had been filed against her, and in December some kind of a trial was had, after which she was taken back to said sanitarium by Mr. Woods. That while there, the appellant begged Mrs. Woods to tell her the whereabouts of her baby girl and Mrs. Woods laughed in her face.

That while appellant was in said sanitarium, Mrs. Woods got possession of two $400 bonds that belonged to appellant, and forced her to sign one of said bonds by threatening to prosecute her for lunacy; that the money was placed in the bank in the name of Mrs. Woods.

That in January she was discharged from said sanitarium, and in May, thereafter, moved to the home of Mrs. Rhodes, where she lived and attended to her own affairs. That on July 10th, Mr. Woods, in company with a deputy sheriff, came and tried to serve papers on her; that Mr. Woods visited the house twice that day, and both defendants came after dark, but she succeeded in evading them each time. That this was a day or two before the trial was to be had, in district court, to determine whether she could regain possession of her adopted child. That the day said trial was called, she was arrested in the elevator to the courthouse at Dallas, on a warrant issued out of the county court, based on a complaint sworn to by Mrs. Woods, charging that she was of unsound mind and that it was necessary, for the welfare of her-

self and others, that she be placed under restraint.

That another complaint was filed in the county court of Dallas county, on July 10, 1928, charging appellant with being of unsound mind, and that it was necessary that she be restrained. That warrants were issued on both of said complaints, for the arrest of plaintiff. That she was arrested on such warrants, and that on August 27, 1928, she was tried, found to be of sound mind, and discharged.

That appellant had been forced to expend money to pay her bills while confined in the various sanitariums, on the repeated and unfounded charges made against her by appellees. That she could not secure and hold any employment, though she had theretofore taught school and worked in different banks as an employee. That appellees had gotten possession of some of appellant's assets, which they expended to defray her expenses while she was held in one of the sanitariums, although the testimony tends to show that at that time no charge of any kind was pending against her in any court.

The appellees allege that they have deposited with the clerk $144, held by Mr. Woods for the account of plaintiff, and tender this amount subject to the order of the court.

The appellees contend that the court correctly directed a verdict in their behalf, because the testimony wholly fails to show that they acted without probable cause and with malice in making the numerous complaints against appellant for lunacy, having her arrested thereon, and confined in the various sanitariums, where she was carried and held.

■ It is settled in this state that testimony showing that a plaintiff in a suit for malicious prosecution has been acquitted of the offense charged is not to be considered in determining the malice of the defendant or the want of probable cause in instituting the prosecution. Bekkeland v. Lyons, 96 Tex. 255, 72 S. W. 56, 64 L. R. A. 474; Equitable Life Assur. Soc. of U. S. v. Lester (Tex. Civ. App.) 110 S. W. 499.

It will be noted that these cases involve suits for malicious prosecution where the plaintiff had been charged with, and acquitted of, the same offense but once. They do not hold that after the plaintiff had been acquitted of the charge in a court of competent jurisdiction, subsequently and repeatedly making the same charge in the same or different courts, by the same defendants, against the same plaintiff, could not be considered as tending to show a want of probable cause and malice.

On February 15, 1927, Mrs. Woods, by her sworn complaint filed in the county court of Tarrant county, Tex., charged appellant with lunacy, had her arrested and restrained until March 1, thereafter, on which day she was tried, found to be of sound mind, and acquitted and discharged by the court. On March 5th, just five days thereafter, Mrs. Woods again, by her sworn complaint, charged appellant with lunacy and asked that she be restrained in the sanitarium. On April 5th, thereafter, the court dismissed the complaint and allowed appellant to go on her way.

On April 21, 1928, Mrs. Woods, by her sworn complaint filed in the county court of Dallas county, Tex., charged appellant with being of unsound mind, and alleged that it was necessary, for the welfare of appellant and others, that appellant be restrained, and she was arrested and restrained. Before the case was tried on this complaint, Mrs. Woods, on July 10, 1928, filed another sworn complaint in the county court of Dallas county, making the same charge and had appellant re-arrested. She was tried and acquitted of both charges on August 27, 1928.

The appellees, as a defense in this suit, allege that appellant is not competent to maintain this suit, because she is insane, and the district court, by permitting her to prosecute her suit, inferentially, at least, again determined that she was not insane.

What more potent, convincing, or binding testimony could appellant offer to the courts that there was no probable cause for charging her with lunacy than the repeated adjudications by the courts, covering so short a space of time, that she was of sound mind.

■ We recognize the doctrine that the determination of a person's sanity or insanity by a court of competent jurisdiction is not res judicata of such sanity or insanity at a prior or subsequent date to that of such determination; but it is our opinion that subsequent and repeated affidavits, made by the same affiant, against the same person, making the same charge, resulting in arrest and confinement, after such person has been repeatedly acquitted of such charge, is a willful misuse of a judicial process, not justified, and should be considered as tending to show malice and want of probable cause, especially where there is no fact or circumstance to suggest that the mental condition of the person prosecuted had changed from the time of the first adjudication of her sanity by the courts until the last adjudication thereof.

This, in effect, is the holding in Shedd v. Patterson, 302 Ill. 355, 134 N. E. 705, 26 A. L. R. 1004; Pierce v. Lyons, 42 S. D. 543, 176 N. W. 521; Severns v. Brainerd, 61 Minn. 265, 63 N. W. 477; Proctor Coal Co. v. Moses (Ky.) 40 S. W. 681; Smith et al. v. Graves, 59 Ind. App. 55, 108 N. E. 168; Coble v. Huffines, 132 N. C. 399, 43 S. E. 909; Schumann v. Tolbert et al., 86 Ga. 25, 12 S. E. 185.

In Davenport v. Lynch, 51 N. C. 545, the Supreme Court of North Carolina says: "We think * * * that his Honor might well have left it to the jury to infer malice, and an

evil motive throughout, from the want of probable cause—the utter groundlessness for the successive applications by the defendants for the proceedings in lunacy."

 Falsely and maliciously filing a complaint charging a person with being of unsound mind, upon which such person is arrested and restrained of his liberty, constitutes a cause of action for malicious prosecution. Suhre v. Kott et al. (Tex. Civ. App.) 193 S. W. 417; Barton v. Woodward, 32 Idaho, 375, 182 P. 916, 5 A. L. R.' 1090.

In Pye et al. v. Cardwell, 110 Tex. 572, 222 S. W. 153, the Supreme Court of this state, speaking through Justice Greenwood, says: "The rule is firmly established in Texas which denies an award of damages for the prosecution of civil suits, with malice and without probable cause, unless the party sued suffers some interference, by reason of the suits, with his person or property."

In our opinion, a prosecution for lunacy is a quasi-criminal proceeding, but should it be held that it is a civil action, nevertheless the lunacy proceedings against appellant revealed by this record would authorize a suit for malicious prosecution because of the interference, in such proceedings, with appellant's person and property.

 If we should be mistaken in holding that the subsequent and repeated complaints made against appellant, charging her with lunacy, upon which charges she was arrested and confined, should be considered as tending to show want of probable cause and malice, in our opinion, independent of the consideration of such subsequent and repeated prosecutions, the testimony was sufficient to raise an issue of fact on appellant's contention of being falsely imprisoned, because the record tends to show that she was held in the Timberlawn Sanitarium at Dallas from November 25, 1927, to December 24th, thereafter, although, at that time, no proceedings of any kind, in any court, were pending against her.

The appellees filed a motion, more than thirty days after the record had reached the Court of Civil Appeals and was filed, to dismiss appellant's appeal because her affidavit of inability to pay or secure the costs of an appeal was filed with and the proceedings thereon had before the county judge of Dallas county; Tex., when such proceedings should have been had in the district court, in which the case was tried, because the term thereof had not expired at the time the county judge determined that appellant was not financially able to pay the costs or any part thereof, or give security therefor.

This motion is overruled. Harwell v. Southern Furniture Co. (Tex. Civ. App.) 75 S. W. 888; Sidoti v. Rapid Transit Ry. Co., 35 Tex. Civ. App. 131, 79 S. W. 326; Fletcher v. Anderson (Tex. Civ. App.) 145 S. W. 622.

Appellees contend that the action of the court in peremptorily instructing a verdict in their behalf was correct because the testimony fails to show that appellant's husband, W. T. Lindsay, had abandoned her and refused to join in the prosecution of the suit.

 The statement of facts certified to by the stenographer discloses that it purports to be only a true and complete statement of the testimony of the appellant and W. L. Gray, given upon the trial. The agreement of the attorneys is that the statement contains the facts and all the facts admitted as evidence before the jury. It does not appear from the record that the finding by the court that W. T. Lindsay, the appellant's husband, had refused to join her in the prosecution of the suit, was based on the testimony heard by the jury. Appellant's right to maintain the suit alone could be determined by the court, preceding the trial of the case on its merits, and we are not inclined to hold that the court erred in allowing appellant to prosecute the suit in her own name. Tex. Jurisprudence, vol. 1, p. 189, par. 139; Breckenridge Ice & Cold Storage Co. v. Hutchens (Tex. Civ. App.) 260 S. W. 684.

The judgment is reversed, and the cause remanded.