## SALADO COLLEGE V. WILLIAM A. DAVIS.

1. MEASURE OF DAMAGES—ATTORNEYS' FEES.—In an action for un-lawfully overflowing the lands of plaintiff, in which defendant pleaded that the suit was wrongfully instituted, and brought for the purpose of vexing the defendant, his attorneys' fees form no part of his right to damages, upon the jury finding against the plaintiff.

2. SAME.—Nor do losses resulting from a failure in defendant to sell his land, occasioned by the unsuccessful suit to abate his use of water privileges, form any part of the damages for which relief is given.

3. SAME.—An act which does not amount to a legal injury, cannot be actionable because it is done with a bad intent.

4. DECLARATIONS AND ACTS OF TRUSTEES, AGENTS, &C.—In an action for trespass upon the grounds of a corporation, the acts and declarations of the individual members of the board of trustees, not authorized by such board, are inadmissible against the plaintiff.

5. SAME.—So declarations limiting a deed executed by the president of a board of trustees, made at the time of its execution, and limiting the meaning of the words of the deed.

6. CONSTRUCTION OF CONTRACT.—The sale of land on a stream, with mill privileges, with a prohibition to raise the water beyond a stipu-lated point, is not a guaranty of any quantity of water or of suffi-ciency of water power for any particular use in machinery. The right to use the stream for mill purposes, is restricted by the limit to the height of the dam, implied in the inhibition against the over-flow beyond the specified point.

7. OVERFLOW.—It was the duty of the court to instruct the jury as to the meaning of the word overflow, in the suit involving the meaning of a contract prohibiting the overflow of certain springs; and if the waters of the springs, in the place where they issued from the ground at the date of the deed, containing the inhibition, were flowed over, or impeded by the higher waters of the dam, this was a violation of the restriction.

APPEAL from Bell. Tried below before the Hon. John P. Osterhout.

Salado College, a corporation, sued Davis for damages, for overflowing certain springs upon the grounds of the college.

On the twenty-eighth day of August, 1863, E. S. C. Rob-ertson, as president of the board of trustees of Salado Col-lege, conveyed to John T. Flint certain land, described by

metes and bounds, being that portion of a one-hundred acre tract donated by said Robertson to the Salado College Joint Stock Company, lying north of the Salado creek, with the privileges and appurtenances thereto belonging, with the full and sole power to him, his heirs and assigns, "to put a dam across said Salado creek, with right to join the same to the opposite bank from the land thereby conveyed, to use and enjoy the water of the same, for milling, manufacturing, or other purposes; but no dam shall be built so high as to overflow the springs along the creek bank."

On the same day, Robertson, in his individual capacity, conveyed to "Flint, his heirs and assigns, the privilege of carrying a water-race through the street, running from east to west, north of the James Anderson homestead, and the mill-site sold the said Flint this day, provided he keeps the same bridged so as not to inconvenience the public in the use of said street."

January 14, 1861, Flint transferred his purchases to Davis, who erected a dam, by which (it was alleged) seven of the springs on the college-grounds were overflowed. The defendant pleaded that his dam, occasioning the overflow, had been erected at the instance of the plaintiff and of its agents, was advantageous to plaintiff; and reconvened, alleging that the action was wrongfully instituted, for the purpose of harassing the defendant; alleging damage from it in loss of the sale of his land, and in paying out attorneys' fees, &c.

The testimony as to the fact of the overflowing, and the effect of the back-water of the dam, was voluminous, and as to the fact of overflowing the springs, was to some extent contradictory.

There was admitted, over the objections of plaintiff, the deed executed the same day to Davis's vendor by Robertson to Flint, mentioned above, and certain letters written by Robertson, and published in a newspaper at Belton, speaking favorably of the mill enterprise of defendant; also testimony showing that one of the board of trustees of the college

owned a mill about two .miles distant; that the defendant and his partner in the mill had subscribed liberally to the funds of the college, and that Robertson, at the time of executing the deed under which defendant claimed, had said that only two of the springs were intended to be protected by the deed. The other testimony and the charge of the court sufficiently appear in the opinion of the court.

The jury found for the defendant, and for damages the sum of $750, for which judgment was rendered. Motion for new trial was overruled, and the plaintiff appealed.

*McFarland & Saunders,* for appellant, discussed the facts and authorities with carefulness and ability, citing Angel on Water Courses, secs. 147, 173, 174, 178, 179, 330, 343, 388, 403, 430, 434; Burditt *v.* Swenson, 17 Tex., 501; Brown *v.* May, 1 Mumf., 288; Osgood *v.* Manhattan Co., 3 Cow., 612; 11 Mass., 140; 2 Wash., 276; 16 Johns., 89; 3 Tenn., 749; Holt, 295; 12 Wend., 452; 1 Greenl. Ev., 124, 125, 275, 278, 453; 2 Stark. Ev., 544, 548; 6 Cowen, 316; 10 Wend., 377: Guess *v.* Lubbock, 5 Tex., 535; Sedg. on Meas. of Dam., 133, 589, 629; 7 Barb., 75; 4 Barb., 256, 261; 4 Denio, 311; 17 Wend., 137, 161; Shepherd *v.* Willis, 19 Ohio, 142; 23 Wend., 420; 21 Wend., 668; 25 Wend., 343; Flack *v.* Neill, 22 Tex., 255; 3 Wend., 296; 3 Car. & P., 19; 2 McCord, 161; Brown *v.* Bush., 45 Penn., 61; Carter *v.* Wallace, 2 Tex., 206; Long *v.* Steiger, 8 Tex., 460; Chandler *v.* Fulton, 10 Tex., 2; Culbertson *v.* Cabeen, 29 Tex., 255; 6 Tex., 407.

*Chandler, Carleton & Robertson,* also for appellant.

*McGinnis & Lowrey* and *A. J. Harris,* for appellee.

*N. G. Shelley,* also for appellee.

GOULD, ASSOCIATE JUSTICE.—In 1863, Salado College, an incorporated institution, sold, and by its president, E. S. C.

Robertson, conveyed to John T. Flint six acres out of a tract of one hundred acres, which had been donated to the college by said Robertson, said six acres lying on Salado creek, on the north side thereof, the deed to Flint containing the following clause: "To have and to hold the same to the said John T. Flint, his heirs, and assigns forever, with the privileges and appurtenances to the same belonging, with full and sole power to put a dam across Salado creek, with right to join the same to the opposite bank from the land hereby conveyed, to use and enjoy the water of the same for milling, manufacturing, or other purposes; but no dam shall be built so high as to overflow the springs along the creek bank." Flint, in 1864, by deed containing the same clause, conveyed the six acres to the defendant, W. A. Davis.

The college brought this suit in 1870, complaining that Davis had erected a dam across the creek to such a height that seven springs along the creek bank on the lands of the college were overflowed, so as to prevent the free use of the springs, and so as to create a nuisance, seeking to recover damages, and to have the same abated.

The answer of defendant admitted the erection of a dam for the purpose of running machinery of different kinds, but claimed that it was so erected at the request of the legally authorized agents of plaintiff, and denied that the springs were thereby overflowed. The answer further alleged that the suit was unjust, and was instituted for the purpose of vexing and harassing defendant, and prayed for damages for attorneys' fees, paid for defending the suit, $750; and for damages in having his rights, easements, and property brought into disrepute, whereby he had been prevented from selling the same, as he had desired to do, the further sum of $1,000.

On the subject of damages, the court, at defendant's request, instructed the jury as follows: "8th. If the jury are satisfied from the evidence in this case that this suit was brought by the plaintiff, or those acting for the plaintiff, without just cause, for the purpose of either vexing, harassing,

or oppressing defendant, they are authorized to render a verdict against the plaintiff for probable counsel fees incurred by him in the defense of the suit." "9th. The defendant is entitled to recover of the plaintiff such actual damage he may have sustained by the unjust institution of this suit, in being thereby prevented from making sale of the property involved in this suit not exceeding the amount claimed in his answer." To which the court added: "This instruction is given with the qualification that the jury are to determine from the evidence, whether the institution of the suit is unjust or not; if unjust, the damages may be given; if not unjust, then no damages will be rendered."

The verdict of the jury (after three mistrials) was in favor of defendant, for $750 damages, and from the judgment rendered thereon the plaintiff has appealed.

We are of the opinion that the foregoing charges are erroneous, and that the verdict and judgment for damages, because of the institution of the suit, was unauthorized and cannot be supported.

To bring an action, though there be no good ground, is not actionable. (Savil *v.* Roberts, 1 Salk., 14; 1 Ld. Raymond, 374; Davies *v.* Jenkins, 11 M. & W., 754.)

An act which does not amount to a legal injury cannot be actionable because it is done with a bad intent. (Parke, B., in Stevenson *v.* Newnham, 13 Com. B., (76 Eng. Com. L.,) 297; 1 Hilliard on Torts, ch. III, sec. 16.)

In ordinary cases, where no further wrongful act is complained of than the institution of a groundless suit, though done knowingly and with intent to harass, the award of costs is, in contemplation of law, full compensation for the unjust vexation. (Cotterell *v.* Jones, 73 Eng. Com. L., 727.)

In such cases, the defendant recovers his costs, "but no allowance is made for his time, indirect loss, annoyance, or counsel fees." (Sedg. on Dam., 38.) He proceeds: "Every defendant against whom an action is 'unnecessarily' brought, experiences some injury or inconvenience beyond what the

costs will compensate him for." This injury or inconvenience results from a resort to the legally-constituted tribunals; and it seems to be the policy of the law to content itself with meting out something less than our ideas of natural justice would demand, rather than to increase the risks attending and discouraging such a resort, and at the same time add to the difficulties and intricacies of ordinary litigation.

This was an ordinary civil suit, in which no extraordinary process was sued out, and, if the indirect effect of the suit was to interfere with the sale of the property which was to some extent the subject-matter of litigation, this is not such an injury as the law regards or makes actionable.

The subject of counsel fees was so fully considered in the case of Landa *v.* Obert, 45 Tex., 539, as to render it unnecessary to cite other authority in support of our conclusion, that the case was not one in which the defendant could recover his counsel fees.

Whilst the errors already discussed require the reversal of the judgment, as the case will be remanded for another trial, it is proper to pass upon such other questions presented as seem liable to recur.

Without deeming it necessary to be more specific, we are of opinion that the individual deed of Robertson to Flint for a different tract of land, the printed communications attributed to him, the evidence as to ownership of other mills by members of the board of trustees, and as to amount contributed by defendant and partner to the college, were all irrelevant.

The statement of Flint, as to his understanding of the contract or deed, and as to what was said by Robertson at the time, to the effect that there were two certain springs which were not to be overflowed, was incompetent, as varying what was expressed in the deed. Evidence was certainly admissible of the number, description, situation, and use of the springs along the bank of the creek, on the college tract of land, at the time of the sale, and indeed of all the circumstances surround-

ing the parties at that time calculated to throw light on the question what springs were intended to be designated by the description or designation in the deed. *Prima facie,* all springs along the bank of the creek and on the one-hundred-acre tract of land were intended. But if some of the springs were small, obscure, never used, and at the same time low, and liable to be overflowed by the erection of any dam sufficient to run machinery, the inference from the face of the deed and from these circumstances would be that such springs were not intended, because such circumstances would show a literal interpretation of the deed to be unreasonable. It was not competent for the defendant to prove what was the high-water mark under the old dam by his own statements, thus making his own verbal declarations evidence for himself.

On the merits of the case, or the weight of the testimony, we express no opinion; but in regard to the respective rights of the parties growing out of the clause in the deed, which we have recited, it is our opinion that, although the plaintiff sold the privilege of erecting a dam for manufacturing purposes, it did not contract that there was sufficient water for all such purposes, without overflowing the springs, but expressly provided that the springs were not to be overflowed, and that, by reason of said deed, defendant acquired no right to erect such a dam as would cause the springs designated to be overflowed. In regard to the meaning of the word "overflowed," we think that the court should have gone a step further than it did in telling the jury that it and the word springs were to be taken in their ordinary meaning among men of common sense. If the waters of the springs in the place where they issued from the ground at the date of the deed were flowed over or impeded by the high waters of the dam, this was certainly overflowed, in the meaning of the deed. A spring that boils up from the bottom of a creek is overflowed by that creek, notwithstanding its waters may issue with such force as to rise above the level of the creek.

The charge of the court extended to the subjects of nuisance

and estoppel; but in the attitude in which the case is presented to us, it is not deemed necessary to discuss other questions than those already noticed.

The judgment is reversed and the cause remanded.

REVERSED AND REMANDED.

[Associate Justice MOORE did not sit in this case.]