Thomas L. MARTIN, Appellant,

v.

Maria R. TREVINO et al., Appellees.

No. 1287.

Court of Civil Appeals of Texas,
Corpus Christi.

Aug. 29, 1978.

Rehearing Granted Nov. 29, 1978.

Second Motion for Rehearing Granted in
Part, and Denied in Part Feb. 28, 1979.

Appellant's Third Motion for Rehearing
Denied March 22, 1979.

**764**

O. F. Jones, III, Victoria, Michael G. Mullen, Will G. Barber, Brown, Maroney, Rose, Baker & Barber, Austin, for appellant.

R. D. Cullen, Cullen, Carsner & Williams, Victoria, for appellees.

Thomas R. Beech, Houston, for Malpractice Defense Committee as amicus curiae.

## OPINION

NYE, Chief Justice.

This is a suit by a doctor against an attorney and his client. Originally, Maria R. Trevino, filed a medical malpractice suit against Dr. Thomas L. Martin. Dr. Martin filed a counterclaim against Mrs. Trevino and instituted a third-party action against Mrs. Trevino's attorneys for filing the malpractice suit against him without just cause. The trial court granted the attorney and his client's motion for summary judgment predicated on the sole ground that the doctor's pleadings "fail[ed] to state a legal cause of action under the laws of the State of Texas, upon which relief can be granted." Dr. Martin perfected his appeal to this Court.

Attorney J. Manuel Banales filed suit on behalf of his client, plaintiff Trevino, against defendant Dr. Martin for medical malpractice. Dr. Martin filed a general denial and a counterclaim against Mrs. Trevino and a third-party action against Attorney Banales and his law firm, Huerta, Pena, Beckman, Rodriguez & Alfaro (hereinafter "attorneys") alleging, in substance, that plaintiff Trevino and her attorneys negligently filed the medical malpractice suit without just cause and without proper investigation to determine whether or not such suit could be legally or factually justified. Dr. Martin alleged that the filing of the medical malpractice suit resulted in "actual expenses and damages" and that "he had lost, and will in all reasonable probability lose in the future, revenue from his medical practice because of such unfounded claims and assertions against him . . ." The doctor further alleged that he was entitled to exemplary damages because the medical malpractice action had been filed by the attorneys "wantonly and with malice of forethought." The plaintiff Trevino and the third-party defendant attorneys filed a general denial to Dr. Martin's counterclaim and third-party action and in addition filed a third-party cross-action against Dr. Martin and his attorney which, in essence, duplicated the negligence allegations contained in Dr. Martin's cross-action against them.

Plaintiff Trevino's attorneys filed a motion for summary judgment predicated on the ground that the counterclaim and third-party action of Dr. Martin against them

failed to state a cause of action. Shortly thereafter, plaintiff Trevino and third-party defendant attorneys filed a motion to "take a non-suit as to all affirmative actions for relief and damages heretofore asserted by each and all of them against Thomas L. Martin." Dr. Martin then filed a supplemental counterclaim and third-party action against Mrs. Trevino and her attorneys which added the following counts to his prior negligence cause of action: 1) malicious prosecution, 2) abuse of process, 3) prima facie tort, and 4) breach of the Texas Code of Professional Responsibility (against the attorneys alone). Dr. Martin prayed for the same damages as originally alleged in his negligence counterclaim and third-party action.

Shortly thereafter, Dr. Martin and his attorney also filed a motion for summary judgment which, in essence, requested the court to grant a summary judgment in their favor in the event that the trial court granted plaintiff Trevino's and third-party defendant attorneys' motion for summary judgment. The trial court held a hearing on both motions. Based on the parties' pleadings and stipulations[1], the trial court granted plaintiff Trevino's and attorneys' motion for non-suit and also granted her attorneys' motion for summary judgment because the "Counter Claim and Supplemental Counter Claim on file herein fails to state a legal cause of action under the laws of the State of Texas upon which relief can be granted." The trial court also granted Dr. Martin's and his attorney's motion for summary judgment on the same grounds.

In considering Dr. Martin's points of error, we will keep in mind the familiar rules governing our review of summary judgments. Rule 166–A, Texas Rules of Civil Procedure, provides that a summary judgment is proper only upon a showing that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." One of the purposes of our summary judgment practice is to eliminate "unpatently, unmeritorious or untenable defenses". *Gulbenkian v. Penn,* 151 Tex. 412, 252 S.W.2d 929 (1952). Such a judgment is proper only where it clearly appears that only a question of law is involved and that there is no genuine issue of fact. *Gaines v. Hamman,* 163 Tex. 618, 358 S.W.2d 557 (1962). Virtually all burdens are on the movant and the non-movant must be given the benefit of every reasonable inference which properly can be drawn in favor of his position. *Gulbenkian v. Penn, supra; Valley Stockyards Company v. Kinsel,* 369 S.W.2d 19, 20 (Tex. Sup.1963). Where the movant makes no attempt to negate the allegation in the non-movant's pleadings, we must presume such allegations to be true for the purposes of our review. *Jacobs v. Theimer,* 519 S.W.2d 846, 847 (Tex.Sup.1975). Here the movant's motion in effect challenges the sufficiency of the non-movant's pleadings to raise a genuine issue of material fact which would constitute a cause of action; the operation of such a motion for summary judgment is closely analogous to a special exception challenging the sufficiency of the non-movant's pleadings as a matter of law. In such a case, the petition to which the motion is directed must be construed most liberally in favor of the pleader. Such a petition is entitled to the benefit of every reasonable inference which can properly be drawn in its favor. *Garza v. Perez,* 443 S.W.2d 855 (Tex.Civ.App.—Corpus Christi 1969, no writ). It must appear that the facts alleged by the non-movant established the absence of a right of action or of an insuperable

1. The parties stipulated that upon an actual trial, the following issues of fact would be raised by the evidence: 1) question "as to the justification of the attorneys for the Plaintiff, Maria R. Trevino, in filing the lawsuit in question . . ."; 2) " . . . [as] to whether or not the attorneys for the Plaintiff, Maria R. Trevino, properly investigated the claims being made against Dr. Thomas L. Martin . . ."; 3) " . . . [E]vidence would be introduced showing that prior to the filing of the lawsuit by the attorneys for Maria R. Trevino, that they had made no inspection of the medical records of the Citizen's Memorial Hospital or of Dr. Thomas L. Martin, respecting the treatment of Maria R. Trevino . . ."; and 4) " . . . Dr. Martin would establish that as a result of the filing of this lawsuit, he did sustain and suffer some financial damage."

barrier to a right of recovery. *Swilley v. Hughes,* 488 S.W.2d 64, 67 (Tex.Sup.1972). See *Smart v. Carlton,* 557 S.W.2d 553, 555 (Tex.Civ.App.—Beaumont 1977, writ ref'd n. r. e.); *Garza v. Perez, supra.*

Dr. Martin brings forward a number of points of error generally contending that the trial court's granting of the motion for summary judgment was erroneous because Dr. Martin pled valid causes of action as to each theory he relied upon.

In point of error 3A, Dr. Martin contends that his pleadings allege a viable cause of action based upon malicious prosecution. Dr. Martin's supplemental counterclaim and third-party cross-action stated, in relevant part, as follows:

"The filing of this suit by Maria R. Trevino, and her attorneys, was unjustified and improperly investigated, and the Plaintiffs have now filed a Motion to Dismiss said cause. Accordingly, it is shown to the Court that the Defendant's cause of action is now additionally founded upon the principles of a suit for malicious prosecution, in that, the original suit filed by the Plaintiff herein has been terminated in favor of this Defendant, there was an absence of probable cause for instituting the same, the Plaintiff and her attorneys instituted the same with malice, and such action resulting in damage to Dr. Martin."

■ In order to maintain an action for malicious prosecution in Texas, a party must plead and prove that: 1) a civil judicial proceeding was previously filed; 2) the defendant in the malicious prosecution case caused the original suit to be filed; 3) the commencement of the original proceeding was malicious; 4) no probable cause existed for the filing of the original proceeding; 5) termination of the original suit in favor of the party prosecuting the later malicious prosecution action, and 6) damages conforming to the legal standards under Texas law. *J. C. Penney Company v. Gilford,* 422 S.W.2d 25, 28 (Tex.Civ.App.—Houston [1st Dist.] 1967, writ ref'd n. r. e.); *Morris v. Taylor,* 353 S.W.2d 956, 958 (Tex.Civ.App.—Austin 1962, writ ref'd n. r. e.), cert. den.,

371 U.S. 842, 83 S.Ct. 71, 9 L.Ed.2d 78 (1962). The gravamen of an action for malicious prosecution is improperly making a party the subject of legal process to his detriment. *Daniels v. Conrad,* 331 S.W.2d 411, 415 (Tex.Civ.App.—Dallas 1959, writ ref'd n. r. e.). Texas adheres to the rule that an award of damages for prosecution of civil suits with malice and without probable cause cannot be recovered unless the party sued, suffers some interference, by reason of the suit, with his person or property. *Pye v. Cardwell,* 110 Tex. 572, 222 S.W. 153 (1920); *Salado College v. Davis,* 47 Tex. 131 (1877); *Louis v. Blalock,* 543 S.W.2d 715 (Tex.Civ.App.—Amarillo 1976, writ ref'd n. r. e.); *Morris v. Blangger,* 423 S.W.2d 133 (Tex.Civ.App.—Austin 1968, writ ref'd n. r. e.). A pleading which does not allege some interference with the complainant's person or property fails to state a cause of action for malicious prosecution and is fatally defective. *Smart v. Carlton,* 557 S.W.2d 553 (Tex.Civ.App.—Beaumont 1977, writ ref'd n. r. e.); *Morris v. Taylor,* 353 S.W.2d 956 (Tex.Civ.App.—Austin 1962, writ ref'd n. r. e.), cert. den., 371 U.S. 842, 83 S.Ct. 71, 9 L.Ed.2d 78 (1962); *Mosley v. Harkins,* 147 S.W.2d 309 (Tex.Civ.App.—Amarillo 1941, no writ); *Shapleigh Hardware Co. v. Keeland Bros.,* 60 S.W.2d 510 (Tex.Civ.App.—Galveston 1933, no writ).

■ The primary dispute between the parties concerning Dr. Martin's alleged cause of action for malicious prosecution is whether or not Dr. Martin has pled special damages (interference with his person or property) as required by Texas law. Dr. Martin admits that his damages consist only of actual litigation expenses and "professional defamatory-type" damages. Dr. Martin argues, however, that the special damage rule is outmoded in today's society where the number of groundless medical malpractice suits is increasing at an alarming rate. He also contends that there is no empirical support to justify the conclusion that the special damage requirement is necessary in order to avoid a chilling effect on good faith litigation. He contends that it is unlikely that the adoption of the opposite

rule would result in endless counterlitigation and counter-counterlitigation. Finally, Dr. Martin argues that the injustice inherent in the special damage requirement is particularly apparent when groundless malpractice suits are brought against physicians because the physician's professional reputation is unnecessarily damaged. This harm, Dr. Martin contends, is damage special to the physician and should be so recognized by this Court.

In support of Dr. Martin's argument that this Court should either abolish the special damage requirement or conclude that harm to a doctor's professional reputation and medical practice amounts. to special damages, the Malpractice Defense Committee, *Amicus Curiae,* states that Texas courts have already broadened the concept of special damages in bankruptcy and lunacy proceedings. The Malpractice Defense Committee relies on the following cases to support its argument that Texas courts have recognized allegations of damage to a businessman's reputation sufficient to come within the purview of the special damage requirement: *Pendleton v. Burkhalter,* 432 S.W.2d 724 (Tex.Civ.App.—Houston [1st Dist.] 1968, writ ref'd n. r. e.); *Daniels v. Conrad,* 331 S.W.2d 411 (Tex.Civ.App.—Dallas 1959, writ ref'd n. r. e.); *Lindsay v. Woods,* 27 S.W.2d 263 (Tex.Civ.App.—Amarillo 1930, no writ); *King v. D. Sullivan & Co.,* 92 S.W. 51 (Tex.Civ.App.1906, no writ).

We have examined each of these authorities and conclude that none of these cases liberalizes or makes an exception to the special damage requirement by recognizing damage to a businessman's reputation as sufficient. It has long been the law in Texas that a suit for damages for malicious prosecution will not lie "unless the party sued suffers some interference, by [the] reason of the [original suit against him], with his person or property." *Pye v. Cardwell,* 110 Tex. 572, 222 S.W. 153 (1920). This rule was followed in each of the cases cited by the Malpractice Defense Committee. In *Pendleton, Daniels* and *Lindsay, supra,* the courts found that the complainant had suffered interference with his person because

the original malicious lunacy proceedings had resulted either in commitment to a mental institution or physical detention for a mental examination. In *King,* the malicious filing of bankruptcy proceedings interfered with the property of the complainant because jurisdiction of the bankruptcy court over all of his property vests upon filing of the bankruptcy petition. See e. g., 8 C.J.S. *Bankruptcy* § 140(1) (1962).

We are bound by the doctrine of stare decisis as set forth by the Texas Supreme Court. See *Swilley v. McCain,* 374 S.W.2d 871 (Tex.Sup.1964); *Mitchell v. Mitchell,* 157 Tex. 346, 303 S.W.2d 352 (1957). Here Dr. Martin did not allege that the original malpractice suit interfered in any way with his person or property. The special damage rule was initially adopted by our Supreme Court for policy reasons to assure every potential litigant free and open access to the judicial system without fear of a countersuit for malicious prosecution. As stated by our Supreme Court over a hundred years ago in *Salado College v. Davis,* 47 Tex. 131, 135–36 (1877):

"In ordinary cases, where no further wrongful act is complained of than the institution of a groundless suit, though done knowingly and with intent to harass, the award of cost is, in contemplation of law, full compensation for the unjust vexation. (Citation omitted).

In such cases, the defendant recovers his cost 'but no allowance is made for his time, indirect loss, annoyance, or counsel fees . . . ' Every defendant against whom an action is 'unnecessarily' brought, experiences some injury or inconvenience beyond what the costs will compensate him for.' This injury or inconvenience results from a resort to the legally-constituted tribunals; and it seems to be the policy of the law to content itself with meting out something less than our ideas of natural justice would demand, rather than to increase the risks attending and discouraging such a resort, and at the same time add to the difficulties and intricacies of ordinary litigation."

Many of these sound policy considerations have prompted other jurisdictions to adopt the special damage requirement. See Birnbaum, "Physicians Counterattack: Liability of Lawyers for Instituting Unjustified Medical Malpractice Actions", 45 Fordham L.Rev. 1003, 1022 (1977).

We are of the opinion that the general policy reasons for adopting the special damage rule in Texas remain viable today. If special damages result, the defendant has his remedy. The special damage requirement assures good faith litigants access to the judicial system without fear of intimidation by a countersuit for malicious prosecution. The special damage requirement also prevents successful defendants in the initial proceeding from using their favorable judgment as a reason to institute a new suit based on malicious prosecution, resulting in needless and endless vexatious lawsuits. Furthermore, it is not the duty of this Court to gather and to interpret empirical data for the purpose of determining whether or not the special damage rule should be abolished. This is a legislative task which has already been undertaken in part by the 65th Texas Legislature. See Medical Liability and Insurance Improvement Act, Article 4590i, Tex.Rev.Civ.Stat. Ann. (Supp.1978). This Act creates a cause of action for bad faith filing of a health care liability claim [2] which will go into effect on January 31, 1979, in the event that the State Bar of Texas fails to certify to the Supreme Court that it has adopted appropriate disciplinary measures against attorneys who file such bad faith claims. Tex.Rev.Civ.Stat.Ann. art. 4590i § 8.05 (Supp.1978). Thus, the Legislature, the Texas Supreme Court and the State Bar of Texas are currently working on what we believe to be an appropriate solution to the groundless medical malpractice problem. Appellant's point of error 3A is overruled.

In point of error 3B, Dr. Martin contends that the trial court erred in granting the summary judgment because his pleadings alleged a viable cause of action based upon abuse of process. Dr. Martin's pleadings, in relevant part, stated:

"The filing of the suit by the Plaintiff and her attorneys herein constituted an abuse of process, producing and proximately resulting the damages set forth in the original Counter Claim; in this connection, Defendant alleges that the Plaintiff improperly procured the issuance of the citation upon him in this cause, with the intent and malice of causing harm to this Defendant, and which did in fact result in harm to this Defendant."

Appellees contend that Dr. Martin failed to allege any abuse or misuse of process after its original issuance and, therefore, failed to plead a viable cause of action for abuse of process.

---

**2.** The Act defines "health care liability claim" as follows:

"a cause of action against a health care provider or physician for treatment, lack of treatment, or other claimed departure from accepted standards of medical care or health care or safety which proximately results in injury or death of the patient, whether the patient's claim or cause of action sounds in tort or contract." Tex.Rev.Civ.Stat.Ann. art. 4590i § 1.03(a)(4) (Supp.1978).

This definition is broad enough to encompass a malpractice suit brought against a physician for negligent medical treatment.

The provisions relating to bad faith filing of a health care claim are as follows:

"Sec. 8.01. With respect to a health care liability claim actually filed, a cause of action based on bad faith may be filed and litigated in a separate lawsuit.

"Sec. 8.02. As used in this subchapter, 'bad faith' means to file and maintain a claim with reckless disregard as to whether or not reasonable grounds exist for asserting the claim.

"Sec. 8.03. At least 60 days before the filing of a suit based on bad faith in any court of this state, a person or his authorized agent asserting a bad faith cause of action shall give written notice by certified mail, return receipt requested, of the claim, to the defendant or his attorney against whom the claim is being made.

"Sec. 8.04. The right of action created in this subchapter shall lie against any claimant or defendant or claimant's or defendant's attorney, or both, who file a health care liability claim in bad faith, or file a claim under this article in bad faith, and the measure of damages with respect thereto shall be limited to $100,000 for compensatory and exemplary damages, as applicable."

The term "process" (judicial) is traditionally defined as, "[t]he writ, summons, mandate or other process which is used to inform the defendant of the institution of (judicial) proceedings against him and to compel his appearance . . ." in court. Black's Law Dictionary, 1370 (4th Ed. 1951). In a narrow sense process refers to individual writs issued by the court during or after litigation. Process has been broadly interpreted to encompass the entire range of procedures incident to litigation. Black's Law Dictionary, 1370 (4th Ed. 1951). The gravamen of an action for abuse of process is the misuse of process, whether properly or improperly obtained, for any purpose other than that which it was designed to accomplish. Restatement of Torts 2d § 682 Comment a (1966). See also *Tandy Corporation v. McGregor,* 527 S.W.2d 246 (Tex. Civ.App.—Texarkana 1975, writ ref'd n. r. e.); *Blackstock v. Tatum,* 396 S.W.2d 463 (Tex.Civ.App.—Houston 1965, no writ). In contrast to an action for abuse of process, an action for malicious prosecution is generally available against one who maliciously caused process to issue and without probable or reasonable cause. In an abuse of process action, however, generally the original issuance of a legal process is justified, but the process itself is subsequently used for a purpose for which it was not designed. W. Prosser, Handbook of the Law of Torts § 121, at 856 (4th Ed. 1971). See *Tandy Corporation v. McGregor,* supra; *Blackstock v. Tatum,* supra.

■ In order for a person to recover for abuse of process, he must plead and prove three essential elements: 1) that the defendant made an illegal, improper, or perverted use of the process, a use neither warranted nor authorized by the process; 2) that the defendant had an ulterior motive or purpose in exercising such illegal, perverted or improper use of the process; and 3) that damage resulted to the plaintiff as a result of such irregular act. *J. C. Penney Co. v. Gilford,* 422 S.W.2d 25, 31 (Tex.Civ. App.—Houston [1st Dist.] 1967, writ ref'd n. r. e.).

■ In this case, Dr. Martin alleged that ". . . the Plaintiff improperly procured the issuance of the citation . . ." The mere procurement or issuance with a malicious intent or without probable cause is not actionable. This is so because there must be an improper use of the process after its issuance. *Tandy Corporation v. McGregor,* 527 S.W.2d 246 (Tex.Civ.App.—Texarkana 1975, writ ref'd n. r. e.); *Blackstock v. Tatum,* 396 S.W.2d 463 (Tex.Civ. App.—Houston 1965, no writ); Restatement of the Law of Torts 2d, § 682 Comment a (1966). Texas has generally recognized a cause of action for abuse of process in situations where the original process, such as a writ of garnishment or writ of sequestration, has been abused to accomplish an end other than that which the writ was designed to accomplish. See *Peerless Oil & Gas Co. v. Teas,* 138 S.W.2d 637 (Tex.Civ.App.—San Antonio 1940), aff'd, 138 Tex. 301, 158 S.W.2d 758 (1942); *Rogers v. O'Barr & Dinwiddie,* 76 S.W. 593 (Tex. Civ.App.1903, no writ).

Dr. Martin argues that his allegations, in effect, state that "Mrs. Trevino and her attorneys secured the issuance of citation in the malpractice case, not because of a good faith belief in the possible merit of the suit, but only in an attempt to do harm to Dr. Martin (e. g., trying to profit at his expense by coercing a settlement)." Dr. Martin's pleadings, however, do not suggest that Mrs. Trevino or her attorneys actually did attempt to coerce a settlement. Even if we assume that the original medical malpractice action was maliciously instituted, Dr. Martin's allegations are fatally defective because they fail to allege an improper use of the process other than the mere institution of the civil action. There were no damages other than that necessarily incident to filing a lawsuit. See e. g., *Joseph v. Markovitz,* 27 Ariz.App. 122, 551 P.2d 571, 575 (1976); *Ewert v. Wieboldt Stores, Inc.,* 38 Ill.App.3d 42, 347 N.E.2d 242, 244 (1976); *Miller v. Stern,* 262 App.Div. 5, 27 N.Y.S.2d 374, 375–76 (1941). Appellant Martin's point of error 3B is overruled.

In point of error 3C, Dr. Martin contends that his pleadings state a valid cause of action for damages against Mrs. Trevino's attorneys for breach of their professional responsibility. Dr. Martin's supplemental cross pleadings allege that the professional responsibilities imposed on all attorneys under Texas law prohibit attorneys from filing frivolous suits. Dr. Martin further alleged that Mrs. Trevino's attorneys filed the original medical malpractice suit against him "without proper investigation" and "without an informed basis of determining prior to the filing of such suit that such suit had reasonable merit."

Section 3 of Article 320A–1, Tex.Rev.Civ. Stat.Ann. (1973), provides, in essence, that all persons who practice law in the State of Texas are members of the State Bar and are subject to the provisions of the State Bar Act and the rules adopted by the Supreme Court of Texas pursuant to the authority granted in Section 4 of that article. The American Bar Association's Code of Professional Responsibility has been adopted, with minor changes, by the Texas Supreme Court. See the Appendix to Title 14, Sections 304–320A–1 (1973 and Supp.1978). Dr. Martin relies on Disciplinary Rule 7–102(A) which provides in relevant part:

"(A) In his representations of a client, a lawyer shall not: (1) [f]ile a suit, assert a position, . . . or take other action on behalf of his client when he knows or when it is obvious that such action would serve merely to harass or maliciously injure another. (2) Knowingly advance a claim that is unwarranted under existing law, except that he may advance such claim . . . if it can be supported by good faith argument for an extension, modification, or reversal of existing law."

Dr. Martin argues that a cause of action based upon the breach of professional responsibility standards should be available against attorneys filing unjustified medical malpractice suits because [b] "the public, including Dr. Martin, should be entitled to professional accountability by the Bar in this regard." Regardless of the arguable merit of such a contention, Dr. Martin's point of error 3C must be overruled because the violation by an attorney of the disciplinary rules adopted by the Texas Supreme Court does not of itself create a private cause of action.

Assuming, as we must, that Dr. Martin could prove that Mrs. Trevino's attorneys had violated Disciplinary Rule 7–102(A), Martin failed to file a grievance under procedures enumerated in the State Bar Rules adopted by the Supreme Court for the redress of alleged professional misconduct as defined in Section 9. The sole remedial method for a violation of the Code is the imposition of disciplinary measures after a hearing by the District Grievance Committee which is authorized to "receive complaints of professional misconduct" and "make such investigation of each complaint . . . [prior] to taking action as set forth [in] § 16." Appendix to Title 14, §§ 11, 12 & 16 (1973). The remedy provided pursuant to these sections for the professional misconduct of an attorney is a public one, not a private one. The duties set forth in the Code of Professional Responsibility establish the minimum level of competence required of attorneys for the protection of the public. A violation thereof will not give rise to a private cause of action. *Merritt-Chapman & Scott Corp. v. Elgin Coal, Inc.,* 358 F.Supp. 17, 22 (E.D.Tenn.1972); *Hill v. Willmott,* 561 S.W.2d 331, 333–34 (Ky.App.1978); *Spencer v. Burglass,* 337 So.2d 596, 600 (La.App.1976).

In point of error 3D, Dr. Martin contends that the trial court's summary judgment was erroneous because his pleadings stated a viable cause of action based upon negligence. In the counterpleading Dr. Martin filed before plaintiff Trevino's medical malpractice claim was non-suited, Dr. Martin alleged a negligence-type cause of action against both Mrs. Trevino and her attorneys, in essence, as follows: 1) that plaintiff Trevino's attorneys acted as Trevino's agent and legal representative so that the consequences of their actions are imputable to her and she is legally responsible to Dr. Martin for their acts; 2) that the attorneys filed the medical malpractice suit in

question when, in fact, no justification therefor existed, and without proper investigation prior to the filing of such suit; 3) that the attorneys were aware that the filing of an unjustified medical malpractice suit would be damaging to Dr. Martin's reputation and would directly and proximately cause him to incur additional expense and to suffer loss of revenue from his medical practice; 4) that the attorneys were also aware that medical malpractice suits are frequently marginal and detrimental unless proper investigation is made prior to the time the suit is instituted; 5) that the attorneys made no investigation and did not determine prior to the filing of the suit whether or not there was any proper justification; 6) that the defendant attorneys did in fact legally owe Dr. Martin the duty of investigating the claim they proposed to file and their failure to do so constituted negligent conduct which resulted in damage to Dr. Martin and that such negligence is imputable to plaintiff Trevino; 7) that Dr. Martin incurred actual expenses and damages of at least $5,000.00 and that he had lost $25,000.00 in revenue from his medical practice because of such unfounded claims asserted by Mrs. Trevino and her attorneys; and 8) that Mrs. Trevino's attorneys acted wantonly and with malice aforethought so that Dr. Martin should be entitled to recover exemplary damages of at least $25,-000.00.

Dr. Martin asserts that the controlling question presented to this Court is whether or not, under Texas law, an attorney has the duty to investigate a claim he proposes to file and to determine whether or not the suit is justified prior to the time the actual cause is filed. Dr. Martin asserts that "[t]his is a case of first impression in Texas on this particular point with respect to counterlitigation by a professional person, such as a physician, who has been damaged by the mere filing of an unjustified defamatory-type malpractice suit."

Other courts in Texas have considered the general issue of whether or not an attorney should be held liable in negligence to a party other than his client for damages resulting from the performance of the attorney's services. See *Bryan & Amidei v. Law,* 435 S.W.2d 587 (Tex.Civ.App.—Fort Worth 1968, no writ); *Traders & General Ins. Co. v. Keith,* 107 S.W.2d 710 (Tex.Civ.App.—Amarillo 1937, writ dism'd); *Citizens' National Bank of Cameron v. Morrison,* 50 S.W.2d 346 (Tex.Civ.App.—Austin 1932, no writ). These cases have generally concluded that an attorney is exempt from liability to a party other than his client for damages resulting in the performance of service which engages and requires the office or the professional training, skill, and authority of an attorney because an attorney deals at arm's length with adverse parties, and that he is not liable to such adverse parties for his actions, as an attorney in behalf of his client. The primary duty the attorney owes is to his client so long as it is compatible with his professional responsibility. If he violates this responsibility, the remedy is public, not private.

In *Bryan & Amidei v. Law,* supra at 593, the court stated:

"It is a general rule that the duties of the attorney which arise from the relation of attorney and client, are due from the attorney to his client only, and not to third persons. The latter have not retained or employed the attorney, nor has he rendered any services for them, at their request or in their interest. No privity of contract exists between them and the attorney. For such injuries, therefore, as third persons may sustain by the reason of the failure or neglect of the attorney to perform a duty which he owed to his client only, they have no right of action against the attorney."

The majority of other jurisdictions considering an attorney's liability to third parties for his negligence is in accordance with these principles. See cases collected in Annotation, "Attorney's Liability, To One Other Than His Immediate Client for Consequences of Negligence in Carrying Out Legal Duties", 45 A.L.R.3d 1181, 1187 (1972); Birnbaum, supra at 1066–1074.

Our review of Texas authorities and the approach taken in other jurisdictions leads

us to the conclusion that this is not the proper case to abolish the privity requirement. Dr. Martin stands in a pure adversary relationship with plaintiff Trevino and her attorneys. The doctor is not an intended beneficiary of the attorneys' services. This view is consistent with virtually every other case which has considered the negligence theory in cases such as this where the physician believes he has been sued for medical malpractice without just cause. *Drago v. Buonagurio,* 61 A.D.2d 282, 402 N.Y.S.2d 250, 252 (1978); *Hill v. Willmott,* 561 S.W.2d 331, 333–34 (Ky.App.1978); *Spencer v. Burglass,* 337 So.2d 596, 600–601 (La.App.1976); Birnbaum, supra at 1072–74. Point of error 3D is overruled.

■ In point of error 3E, Dr. Martin, in effect, requests this Court to recognize a nameless tort concept, adopted and known by some jurisdictions, as "Prima Facie Tort". Dr. Martin contends that his counterpleadings stated a valid cause of action because he alleged: "The actions of the Plaintiff and her attorneys in filing this lawsuit amounted to a 'Prima Facie Tort', which included the infliction of intentional harm, resulting in damage, without excuse or justification, resulting from unjustified, intentional, and malicious actions on the part of the Plaintiff and her attorneys, which produced and proximately caused the damages set forth in the Defendant's Counter Claim."

Prima Facie Tort can be defined as: the infliction of an intentional harm without excuse or justification by an act or series of acts which otherwise would be lawful and which results in special damage. It does not fall within the categories of traditional torts. See *Drago v. Buonagurio,* 61 A.D.2d 282, 402 N.Y.S.2d 250, 252 (1978) and authorities cited therein. Professor Birnbaum[3] has analyzed the historical development of the Prima Facie Tort concept and its application to medical malpractice situations. The basic elements of the Prima Facie Tort cause of action that are apparently emerging include: 1) an intent to

injure on the part of the defendant; 2) a lack of justification in so acting; and 3) special damages, alleged with particularity. See Birnbaum, supra at 1054; see also, Comment Note—Prima Facie Tort, 16 A.L. R.3d 1191, 1215–1220 (1967). Generally, an allegation that the physician has sustained damage to his professional standing and reputation is not sufficient.

In support of his contention that this Court should adopt the Prima Facie Tort concept in this case, and in so doing, recognize damage to professional reputation and standing as a sufficient showing of damages, Dr. Martin relies primarily upon *Drago v. Buonagurio,* 61 A.D.2d 282, 402 N.Y. S.2d 250 (1978). While *Drago* did adopt the Prima Facie Tort concept, apparently without the imposition of the special damage requirement, that court carefully restricted the application of its decision to the unique factual context before it by stating:

" . . . nor should this opinion be read as creating or recognizing a distinctly new cause of action whenever a physician escapes malpractice liability and claims he was wrongfully charged in the first place." *Drago,* supra, 402 N.Y.S.2d at 253.

In *Drago,* the physician alleged: 1) that he had no association, directly or indirectly, with the patient who instituted the original medical malpractice action; and 2) that he had been served as a defendant for discovery purposes in order for the malpractice plaintiff to determine where the responsibility could be placed. *Drago,* supra, 402 N.Y.S.2d at 252. The *Drago* court considered these facts to be unique and controlling.

The case before us does not present the same or similar facts. If we were to adopt the Prima Facie Tort concept in this case, the effect would be to circumvent the special damages required in malicious prosecution actions and most Prima Facie Tort cases, and the privity requirement of negligence actions brought against an attorney by a third party not in privity with the

3. See Birnbaum, Physician's Counter Attack: Liability of Lawyers for Instituting Unjustified Medical Malpractice Actions, 45 Fordham L.Rev. 1003, 1051–1066 (1977).

attorney's client. This we will not do. Furthermore, our adoption of the Prima Facie Tort concept in this cause would pre-empt the Legislature's adoption of the Medical Liability and Insurance Improvement Act and its provisions regarding the institution of bad faith medical care claims. If this particular type of a cause of action has merit, it should be mandated by the Legislature as a matter of public policy, and not by our courts. Dr. Martin's point of error 3E is overruled.

In point of error two, Dr. Martin has failed to brief the point or present arguments relative to his formal complaint. A point that is not briefed need not be considered on appeal. All the other points of error have been considered and are overruled.

The judgment of the trial court is AFFIRMED.

## OPINION ON MOTION FOR REHEARING

On motion for rehearing, Dr. Martin reasserts his point of error that Mrs. Trevino was not a party to her attorneys' motion for summary judgment and, therefore, the trial court erred in rendering a summary take nothing judgment in favor of Mrs. Trevino and in denying Dr. Martin any relief against her. When we considered this point of error in our original opinion, we did not consider that the trial court had treated Mrs. Trevino as one of the summary judgment movants, but rather, that the trial court had on its own motion dismissed Mrs. Trevino from the lawsuit. This specific point of error, however, was overruled on the basis that Dr. Martin had failed to brief it. If on the other hand the trial judge had, in fact, treated Mrs. Trevino as one of the summary judgment movants when she was not, then the trial court's judgment would not be final and such error would·be to fundamental error of which we must recognize on our own motion. In such a situation, we would be required to dismiss the appeal for lack of jurisdiction. See *Dixon v. Shirley*, 531 S.W.2d 386 (Tex.Civ.App.— Corpus Christi 1975, writ ref'd n. r. e.).

That portion of the trial court's final judgment which granted the summary judgment motion filed by Mrs. Trevino's attorneys does not state that summary judgment is also granted as to Mrs. Trevino. An examination of the pleadings, motions and final judgment contained in this appellate record does not reveal the precise reason for which the trial court denied Dr. Martin any relief as to Mrs. Trevino. The judgment does say "that no further relief will be granted to any party thereto." Compare: *North East Independent School Dist. v. Aldridge*, 400 S.W.2d 893, 898 (Tex. Sup.1966).

Since the record is not clear, we are hereby granting appellant's motion for rehearing. We hereby reverse the judgment of the trial court and remand it to that court for the purpose of entering a final judgment in accordance with the original opinion and this opinion on motion for rehearing herein as to all parties herein.

## OPINION ON SECOND MOTION FOR REHEARING

Appellant has filed a second motion for rehearing and a request to amend point of error number two (point of error number eight in his second motion for rehearing) so as to clarify a possible procedural point of law. In a letter to the Clerk of this Court, the appellant states, "It is not now, and has never been, appellant's intent in raising these Points of Error to question the finality or procedural propriety of the trial court's judgment, including absence of a recital that Mrs. Trevino joined in her attorneys' motion for summary judgment." The appellant contends that "[the] dismissal for failure to state a claim is the only trial court action appellant intends to complain of in this Court or the Texas Supreme Court with respect to the foregoing Points of Error."

This was our interpretation of what took place in the trial court's judgment in our original opinion. It is not necessary for appellant to amend point of error number two (or point of error number eight in

**774**

appellant's second motion for rehearing) in view of this clarification. We believe that we were correct in the original opinion in disposing of appellant's second point of error.

Accordingly, the opinion on appellant's first motion for rehearing is withdrawn. Our original opinion is reinstated as originally handed down.

Appellant's second motion for rehearing is in all other respects overruled.