**Lee C. DETENBECK, M.D., Appellant**

v.

**Winifred KOESTER and Charles Houssiere, Appellees.**

No. 01–93–00913–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Oct. 13, 1994.

Rehearing Overruled Nov. 17, 1994.

---

Joann Storey, Houston, for appellant.

J. Philip Griffis, Houston, for appellees.

Before HUTSON–DUNN, COHEN and O'CONNOR, JJ.

## OPINION

HUTSON–DUNN, Justice.

The issue in this case is whether a doctor may maintain a cause of action for abuse of process against his former patient and her attorney for bringing a frivolous malpractice suit in an attempt to coerce a settlement.

In 1981, appellee, Winifred Koester, filed a malpractice suit against appellant, Dr. Detenbeck, arising out of a knee surgery he performed on her in 1978. In 1990, Koester dismissed the suit against Dr. Detenbeck with prejudice. After the malpractice case was dismissed, Dr. Detenbeck filed this abuse of process suit against Koester and her attorney, appellee, Charles Houssiere. Koester and Houssiere filed special exceptions that were sustained by the trial court, claiming that Dr. Detenbeck's pleading failed to state a cause of action. Dr. Detenbeck chose not to amend his pleadings, and the trial court dismissed his case with prejudice. In his sole point of error, Dr. Detenbeck contends the trial court erred in sustaining appellees' special exceptions and dismissing his case. We affirm.

## STANDARD OF REVIEW

A special exception is the proper method to use to determine whether the plaintiff has pled a cause of action. *Albright v. Texas Dept. of Human Servs.*, 859 S.W.2d 575, 582 (Tex.App.—Houston [1st Dist.] 1993, no writ). When special exceptions are sustained, the pleader may amend the petition or refuse to amend and challenge the ruling on appeal. *Id.* When the trial court dismisses a case upon special exceptions for failure to state a cause of action, the appellate court's review of this legal question is de novo. *Sanchez v. Huntsville Independant Sch. Ass'n*, 844 S.W.2d 286, 288 (Tex.App.—Houston [1st Dist.] 1992, no writ). The appellate court is required to accept as true all factual allegations in the pleading. *Id.*

## BACKGROUND

The facts set forth in Dr. Detenbeck's pleadings, which we are obliged to accept as true, are as follows. In 1980, Winifred Koester had mounting medical bills from numerous surgeries to her knee. In an effort to meet these expenses, Koester sought legal advice from Gus J. Zgourides to determine whether she could bring a medical malpractice claim against Dr. Detenbeck, who had performed a knee replacement on her in 1978. Zgourides obtained the records from Dr. Detenbeck's 1978 surgery, and a subsequent surgery performed by Dr. Bruce Cameron in 1979, and forwarded them to Dr. Sam Yates for review. After reviewing the records, Dr. Yates concluded that there had been no negligence on the part of Dr. Detenbeck. Thereafter, Zgourides informed Koester that there was not much of a chance of establishing liability against Dr. Detenbeck, and withdrew his representation.

Koester then hired Charles Houssiere to represent her. She also gave Houssiere copies of the opinions by Zgourides and Dr. Yates. On January 19, 1981, the day before the statute of limitations ran on Koester's claim, Houssiere filed suit against Dr. Detenbeck on Koester's behalf.

Four years later, with little or no discovery, Houssiere designated Dr. Bruce Cameron as an expert, even though Dr. Cameron testified that in his opinion the surgery had been performed by Dr. Detenbeck in the standard and accepted manner for orthopedic surgeons.

Dr. Detenbeck further alleges that seven years after the malpractice suit was filed, Houssiere began trying to coerce a settlement of the case by threatening to try the case, and forcing Dr. Detenbeck to take considerable time away from his practice. In an attempt to support the malpractice claim, Houssiere obtained an affidavit from Dr. John Bunting, an internist, stating his opinion that Dr. Detenbeck was negligent in his treatment of Koester.

Two years later, now nine years after the malpractice suit was filed, Houssiere again began trying to coerce a settlement by threatening to keep Dr. Detenbeck tied up for two weeks in trial. After this attempt at settlement, Houssiere's expert, Dr. John Bunting, signed a second affidavit stating that he had not read the previous affidavit, nor had an opportunity to review it after he

signed it. He further stated that he had no opinion as to the standard of care applicable to orthopedic surgeons, and that the surgery performed by Dr. Detenbeck exceeded his scope of knowledge. He concluded that he had no criticism of Dr. Detenbeck, and did not feel that he was negligent.

On September 11, 1990, over nine years after the malpractice suit was filed, Houssiere and Koester decided to dismiss the action with prejudice. Dr. Detenbeck then brought this action against Koester and Houssiere for abuse of process.

## ABUSE OF PROCESS

The sole issue to be resolved by this Court is whether the factual allegations set forth in Dr. Detenbeck's pleading will support a cause of action for abuse of process. The elements of a cause of action for abuse of process are: (1) that the defendant made an illegal, improper, perverted use of the process; (2) that the defendant had an ulterior motive or purpose in exercising such illegal, perverted, or improper use of process; and (3) that damage resulted to the plaintiff from the irregularity. *J.C. Penney Co. v. Gilford*, 422 S.W.2d 25, 31 (Tex.Civ.App.— Houston [1st Dist.] 1967, writ ref'd n.r.e.). To constitute an abuse of process, the process must be used to accomplish an end which is beyond the purview of the process, and which compels a party to do a collateral thing which he would not be compelled to do. *Blanton v. Morgan*, 681 S.W.2d 876, 878 (Tex.App.—El Paso 1984, writ ref'd n.r.e.). When the process is used for the purpose for which it is intended, even though accompanied by an ulterior motive, no abuse of process occurs. *Baubles & Beads v. Louis Vuitton*, 766 S.W.2d 377, 378–79 (Tex.App.—Texarkana 1989, no writ).

The clearest explanation of abuse of process is found in *Blackstock v. Tatum*, 396 S.W.2d 463, 468 (Tex.App.—Houston [1st Dist.] 1965, no writ), (*quoting, Prosser on Torts*, 3rd Ed., Section 115):

"The essential elements of abuse of process * * * * have been stated to be: first, an ulterior purpose, and second, a wilful act in the use of the process not proper in the regular conduct of the proceeding.

Some definite act or threat not authorized by the process, or aimed at an objective not legitimate in the use of the process, is required; and there is no liability where the defendant has done nothing more than carry out the process to its authorized conclusion, even though with bad intentions. The improper purpose usually takes the form of coercion to obtain a collateral advantage, not properly involved in the proceeding itself, such as the surrender of property or the payment of money, by the use of the process as a threat or a club. There is, in other words, a form of extortion, and it is what is done in the course of negotiation, rather than the issuance or any formal use of the process itself, which constitutes the tort."

## ANALYSIS

Several Texas cases have addressed the issue of whether a doctor may recover from former patients and their attorneys because of prior malpractice suits. All of these cases, regardless of the cause of action asserted, have been unsuccessful. See *Kale v. Palmer*, 791 S.W.2d 628 (Tex.App.—Beaumont 1990, writ denied) (fraud and conspiracy); *Blanton v. Morgan*, 681 S.W.2d 876 (Tex.App.—El Paso 1985, writ ref'd n.r.e.) (malicious prosecution and abuse of process); *Butler v. Morgan*, 590 S.W.2d 543 (Tex.App.—Houston [1st Dist.] 1979, writ ref'd n.r.e.) (malicious prosecution); *Martin v. Trevino*, 578 S.W.2d 763 (Tex.Civ.App.—Corpus Christi 1978, writ ref'd n.r.e.) (malicious prosecution, abuse of process, prima facie tort, and breach of Texas Code of Professional Responsibility); *Moiel v. Sandlin*, 571 S.W.2d 567 (Tex.Civ.App.—Corpus Christi 1978, no writ) (malicious prosecution, barratry, abuse of process, and negligence); *Wolf v. Arroyo*, 543 S.W.2d 11 (Tex.Civ.App.—San Antonio 1976, no writ) (constructive contempt).

In *Martin v. Trevino*, 578 S.W.2d at 768–69, the plaintiff-physician brought an action against his former patient and her attorney alleging they had negligently filed a medical malpractice suit against him without just cause or proper investigation. The court held that the plaintiff's pleadings failed to state a cause of action for abuse of process

because "they fail to allege an improper use of the process other than the mere institution of the civil action. There were no damages other than that necessarily incident to filing a lawsuit." *Id.* at 769.

Dr. Detenbeck argues that *Martin* is distinguishable because in that case there was no evidence that the patient and her attorney ever actually attempted to coerce a settlement, whereas in this case, Houssiere allegedly threatened to tie up Dr. Detenbeck for two weeks by taking the case to trial if the doctor refused to settle. We find this argument unpersuasive. Evidence of an actual attempt to coerce a settlement would go to proving the element of malice. However, the mere procurement or issuance of process with a malicious intent, or without probable cause, is not actionable; there must be an improper use of the process after its issuance. *Id.* at 769. "[T]here is no liability where the defendant has done nothing more than carry out the process to its authorized conclusion, even though with bad intentions." *Blackstock* at 468. Where the only process issued is a citation, and no allegations are made that there was any abuse in the execution or service of this process, no cause of action for abuse of process is stated. *Morris v. Blangger*, 423 S.W.2d 133, 134 (Tex.Civ. App.—Austin 1968, writ ref'd n.r.e.).

In *Blanton*, 681 S.W.2d at 877–78, the plaintiff-physician alleged that his former patient and her attorney asserted a claim for punitive damages in their malpractice suit and attempted to use the punitive damages claim to extort a settlement of the case. When the attempt at settlement failed, the attorneys dropped their punitive damages claim. The court held that the plaintiff's petition failed to allege a cause of action for abuse of process because the process was used only for its intended purpose, i.e., to compel the doctor to answer the petition. The court followed the *Martin* case in holding that the suit failed to allege an improper use of the process. *Id.*

In *Blackstock*, 396 S.W.2d at 467–468, the appellants alleged that the appellees filed a frivolous suit against them in an attempt to coerce appellants into dismissing an action that was already pending between the parties. In rejecting appellants' abuse of process claim, the court stated:

> As we understand it, *abuse of process consists not in the filing and maintenance of a civil action*, but rather in the perversion of some process issued in the suit after its issuance. The process referred to in the cases is not in the filing and maintenance of a civil action, but in the wrongful use of a writ issued in the suit. The writ or process must be used in a manner or for a purpose for which it is not by law intended and the use must interfere with the person or property of another

*Id.* at 467 (emphasis added).

Based on these cases, we conclude that Dr. Detenbeck's cause of action for abuse of process must fail. Even if we were to assume that Koester and Houssiere instituted the malpractice suit without probable cause, and with the malicious intent of coercing a settlement, Dr. Detenbeck's pleadings remain defective because they do not allege an improper use of the process. The only process involved in this case was the citation issued when the cause was filed. The citation was used only for its intended purpose of compelling an answer to the lawsuit. The mere maintenance of a civil action, even if done with malicious intent, will not support a cause of action for abuse of process.

Furthermore, an attempt to coerce a settlement is not an attempt to obtain a collateral advantage not properly involved in the proceeding itself. The purpose every lawsuit is to obtain either a settlement or a judgment. Therefore, an attempt to use a citation, and the resulting lawsuit, to coerce a settlement, is not an attempt to obtain a collateral advantage, but merely an attempt to carry out the process to its natural conclusion.

This is not to say that doctors have no remedy for frivolous, or "bad faith" lawsuits filed by former patients. When the Medical Liability and Insurance Improvement Act [1] was enacted in 1977, subchapter H of the statute allowed a health care professional to

---

1. Tex.Rev.Civ.Stat.Ann. art. 4590i (Vernon Pamph. 1994).

file a separate suit against a patient who brought a lawsuit in "bad faith," or "with reckless disregard as to whether or not reasonable grounds exist for asserting the claim." [2] However, by its own terms, subchapter H *never became effective* because the State Bar of Texas certified to the Supreme Court that it had adopted rules for appropriate disciplinary measures against an attorney who filed a claim in bad faith.

Disciplinary rules alone proved to be an unsatisfactory remedy, because physicians who suffered damages as a result of a breach of the Code of Professional Responsibility had no cause of action for that breach. *Blanton,* 681 S.W.2d at 878–79.

■ However, in 1988 the Supreme Court enacted TEX.R.CIV.P. 13, which allows the trial court to impose sanctions against an attorney or party for lawsuits that are groundless, and brought in bad faith or for purposes of harassment. A lawsuit is "groundless" if it has "no basis in law or fact and not warranted by good faith argument for the extension, modification, or reversal of existing law." TEX.R.CIV.P. 13. Therefore, the proper remedy for a physician seeking compensation for damages as a result of a "bad faith" malpractice action, is to seek rule 13 sanctions in the malpractice action; a separate lawsuit for abuse of process is inappropriate.

The judgment is affirmed.

---

**2.** Medical Liability & Insurance Improvement Act, 65th Leg., Ch. 817, §§ 8.01–8.05, 1977 Tex. Gen.Laws 2050–51.